**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**MICRO–MOISTURE CONTROLS, Inc., et al., Defendants.**

United States District Court
S. D. New York.
Jan. 24, 1957.

Edward O. B. Reid, New York City, for plaintiff.

Edmond C. Blumner, Spencer Pinkham, John H. Kelley, Sidney B. Josephson, Lichtig, Copland & Greenfield, New York City, for defendants.

RYAN, District Judge.

Securities and Exchange Commission as plaintiff has moved in this suit for a preliminary injunction under Rule 65, Fed.Rules Civ.Proc. 28 U.S.C.A. pending trial and final determination restraining the defendants and each of them from directly or indirectly offering to sell and selling shares of the common stock of the defendant Micro-Moisture Controls, Inc., which is not exempt from the provisions of Section 5 of the Securities Act of 1933, 15 U.S.C.A. § 77e, or from employing the mails or means of interstate commerce for the purpose of sale or delivery after sale of this non-exempt common stock unless and until a registration statement is in effect or has been filed with the Commission as to this non-exempt stock.

The motion was brought on for hearing by order to show cause which contained a restraining order enjoining the defendants until after the hearing and decision on this motion from doing the acts which the Commission seeks by this motion to enjoin by preliminary injunction pendente lite. An application by the defendants to vacate the restraining order as to some, if not all of the defendants, was denied after hearing. However, a further order was issued continuing the provisions of the original restraining order but clarifying that order so as to specifically exempt the brokers and dealers named as defendants from dealing or trading in common stock of Micro-Moisture Controls, Inc. which had not been owned by the issuer or a person

under direct or indirect control of or by the issuer or an underwriter within the meaning of Sec. 2(11) of the Securities Act of 1933, 15 U.S.C.A. § 77b(11).

I make the following findings of fact on the evidence submitted on this motion.

Micro-Moisture Controls was incorporated on January 16, 1953 under the laws of Delaware. At present, it has its executive offices and place of business in Mineola, N. Y. and two subsidiary establishments in Canada. Initial authorized capital was 2,000,000 shares of common stock with a par value of one cent; of this, 450,000 shares were issued to the organizers in payment of patent application rights and other considerations providing for assuring the corporation the exclusive use of "Weather Guards"—a moisture sensitive relay system. Subsequently, the authorized capitalization was increased to 7,000,000 shares of common stock; 5,512,983 shares are outstanding.

One Alexander L. Guterma was one of the principal organizers of Micro-Moisture.

On March 27, 1953 the corporation filed a letter of notification under Regulation A of the Rules and Regulations of the Securities Act for a proposed public offering of 299,000 shares at an offering price of $1 per share. It is to be noted that the filing and the offering circular disclose—(1) that the defendant McGrath Securities Corporation was the underwriter of the offering; (2) that Alexander Guterma was then Chairman of the Board of Directors of the issuer; (3) that he was also the owner of the majority of the capital stock of McGrath; and (4) that the defendant Robert G. Leonhardt was president of the underwriter. The issuer on March 29, 1954 advised the Commission that all of this stock had been sold to the public. Later in February, 1954 Micro-Moisture issued 33,000 shares of its common stock to the stockholders of All Weather Window Corporation of Florida in payment for the transfer of its business and assets. There was no registration or qualification by the defendant corporation of

this stock, exemption being claimed under the second clause of Section 4(1), 15 U.S.C.A. § 77d(1). Again on May 27, 1954 Micro-Moisture issued 318,007 shares of its common stock to Eastern Koolvent Aluminum Awning, Inc. of Mineola in consideration for the transfer of its assets. Again, there was no registration or qualification of this stock, exemption being claimed under Rule 133 of the Regulations of the Act.

Shortly before this last transaction— (1) Guterma resigned as a Director of Micro-Moisture; (2) sold 160,000 shares of his then retained total of 227,000 shares of promotional common stock to the defendant Garland L. Culpepper, Jr., (3) Culpepper was elected President and Director of the defendant corporation and (4) received from Guterma a voting power over Guterma's remaining 67,000 shares irrevocable until June 30, 1956. At that time, the defendant Leonhardt gave Culpepper a like proxy over 60,000 shares which he owned. Thereafter Guterma and Leonhardt sold to the public without registration or notification to the Commission this total of 127,000 shares subject to the voting proxies which had been given Culpepper. In August, 1954, Micro-Moisture issued for investment 10,000 shares as compensation to one Jack Carmel, then a vice-president and director; in October, 1954, it issued 195,643 shares to eight stockholders of a corporation called Comfort Zone Corporation in exchange for 82% of this corporation's outstanding stock; and again on November 30, 1954 it issued 430,000 shares to 14 stockholders of Koolvent Awning, Ltd. of Canada, in exchange for all the capital stock of that corporation. It is to be noted also that all of these last three issues were without prior approval of the stockholders of Micro-Moisture and that none were registered or qualified under the Securities Act of 1933, exemption being claimed as a private transaction under Section 4(1) of the Act.

It is further of record that on January 13, 1955 Micro-Moisture filed with

the Commission a notification (on Form 1–A) under Regulation A covering a public offering of $250,000 of 6⅝ cumulative income convertible debentures. By October 27, 1955, $218,400 of this bond issue had been sold to the public and the unsold balance was withdrawn. The offering circular on this issue represented (1) that defendant Louis Levin was the president of Koolvent Awning, (2) that he had received 201,500 shares of the 430,000 shares issued on the Koolvent acquisition (3) that he was the executive vice president and a director of Micro-Moisture. The minutes of the Board of Directors of defendant corporation do not contain any entry indicating that Levin was an officer or director until he became President and Director on April 4, 1956, when the defendant Culpepper resigned as such to become a "consultant" to defendant and Levin was elected to replace him.

Still further, Micro-Moisture on December 20, 1955 without prior approval of stockholders issued to the Peeby Company, Inc. of Canada for all its assets, 1,200,000 shares which were distributed to the twenty stockholders of the Peeby Company. These 1,200,000 shares were neither registered nor qualified under the Act, a claim of exemption being predicated on the provisions of Rule 133. Again in February and March, 1956, defendant issued to six persons for investment 44,360 shares, exemption to registration or qualification being based upon Section 4(1) of the Act.

In addition to all these issues and without prior approval of stockholders Micro-Moisture on July 27, 1956 issued to its president Levin 44,000 shares for services rendered and, finally, on June 21, 1956, issued to Converters Acceptance Corporation of Montreal, Canada, 2,396,485 shares of its common stock in exchange for all of Converters' assets. These shares again were not registered or qualified, reliance for exemption being placed on Rule 133. These 2,396,485 shares were distributed as a liquidating dividend by Converters to its 31 stockholders.

Against all this background of "high" financing we approach the specific situation which has given occasion for the filing of this suit by the Commission.

Twenty-six of the thirty-one stockholders of Converters included among them the defendant Gershon Kaplan had severally received a total of 1,830,920 shares of Micro-Moisture. They each "separately" signed an irrevocable power of attorney dated June 21, 1956 appointing the defendant John Herschorn their attorney for the sole purpose of selling, signing and transferring in his sole discretion the shares of common stock of Micro-Moisture thus acquired and empowering him also to pledge or hypothecate all or part of the shares.

Herschorn, on July 5, 1956, delivered these powers of attorney to the defendant McGrath Securities, which was no stranger to the operations of Micro-Moisture. Also on June 21, 1956, Herschorn gave to McGrath his power of attorney covering 424,697 shares of defendant company which he had received as a liquidating dividend for his holdings in Converters.

Investigation by the Commission has shown the following which reveals additional evidence of a closeness of association and a concert of action between the defendants—

1. the defendant Albert J. Grayson on July 9, 1956, obtained a bank loan of $100,000 hypothecating at the time 200,000 shares of Micro-Moisture stock registered in the name of Herschorn;

2. at the same time defendant Louis Levin, presently the principal executive officer and a director of Micro-Moisture, borrowed $60,000 of the same bank pledging as collateral 20,000 shares of Micro-Moisture also registered in the name of Herschorn and 100,000 shares in the name of Gershon Kaplan;

3. on the same day, the defendant Leonhardt borrowed from the same bank $50,000 pledging 100,000 shares in the name of Herschorn.

Recently, on December 14, 1956, Levin caused to be represented to the Commission that all of the Directors of Micro-

Moisture serve at his "invitation"; that he is the sole voting trustee of 998,210 shares of the common stock of Micro-Moisture which had been issued by Converters subject to two irrevocable trust agreements. The proof is abundant that the defendants are in substantial and actual control of Micro-Moisture and have been for some time. We are convinced from the proof submitted that at least 379,863 shares, a part of the total of 2,396,485 shares of the common stock of Micro-Moisture distributed as a liquidating dividend to 31 stockholders of Converters have been sold through the mails by the active cooperation, assistance and concerted action of all the defendants. I find that defendant Herschorn has under his control 648,831 shares subject to powers of attorney. There is every reason to believe that these defendants unless enjoined will continue "peddling" it to the general public using the mails and other means of interstate commerce to do so.

Indeed, there appears from the voluminous papers submitted to be no material disagreement as to the facts. We are told that presently 3,408,572 shares are "in the hands of more than 4000 members of the public."

The only question presented is whether the defendants by their concerted acts have violated the law so as to permit judicial remedy—of this I have no doubt.

█ Rule 133 has no application to the facts here presented for the reason that the shareholders of Converters Acceptance were and are in control of Micro-Moisture and that the "exchange" of Converters assets for Micro-Moisture stock was but a step in the major activity of selling the stock. The evidence establishes that the persons offering for sale and selling this stock are persons in control of the issuer within the statutory definition of Sec. 2(11) of the Securities Act of 1933. The defendants were in control because they possessed and exercised the power to direct the management and policies of Micro-Moisture (Rule 405) and particularly were in a position to obtain the required signatures of Micro Moisture and its officers and directors on a registration statement.

Certain it is that Levin stood in the position of a controlling person; this, supported by the only logical inference which can be drawn from the undisputed facts—that all the defendants were acting together and in concert for a common purpose—brings them all within the group of persons in control of the issuer.

The proferred stipulation and promise of the defendant McGrath that "it will not distribute any such shares (i. e. unsold shares delivered upon merger of Converters with Micro-Moisture) and will not distribute any shares held by anyone who controls Micro, is controlled by Micro, or is under common control with Micro" coming as it does after more than 3½ years of dealings in and participation in the manipulations of the Micro affairs, arrives too late. The concern of McGrath for the public which has invested is touching but not impressive.

Following the Converters transaction there were 5,424,694 shares of Micro-Moisture outstanding of which 2,396,485 shares (45%) were owned by former Converter shareholders; since then, 379,-863 of this latter number have admittedly been sold through McGrath and the other broker-dealers to the American public without registration or qualification. It is about time that this was stopped; the law requires it and the Court will not hesitate to do it.

█ I find that there is ample evidence to support a finding at this time that these defendants by their acts threaten to comit further irreparable injury, loss and damage to the investing public by offering this additional stock without registration or qualification, and I conclude that the restraining order should be continued pending trial and final determination.

Motion is granted; submit order.