**SECURITIES AND EXCHANGE COM-MISSION, Plaintiff,**

**v.**

**AMERICAN BERYLLIUM & OIL COR-PORATION et al., Defendants.**

**No. 68 Civ. 1939.**

United States District Court
S. D. New York.

June 25, 1969.

See also D.C., 47 F.R.D. 66, and 303 F.Supp. 903.

Mahlon M. Frankhauser, Regional Administrator, S. E. C., New York City, for plaintiff; Donald N. Malawsky and Marvin G. Pickholz, New York City, of counsel.

Jerry Zohn, New York City, for defendant Gottlieb.

Louis Kaye, New York City, for defendant Hesse.

## OPINION

COOPER, District Judge.

The Securities and Exchange Commission (SEC), moving pursuant to 15 U.S.C. § 77t(b) and 15 U.S.C. § 78u(e), seeks to enjoin alleged violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The complaint in essence charges that all defendants[1] have (1) sold unregistered stock of American Beryllium & Oil Corporation (ABO) in violation of Sections 5(a) and (c) of the 1933 Act (15 U.S.C. § 77e(a) and (c)); (2) sold and offered to sell ABO stock by means of untrue statements of material facts and omissions to state material facts in violation of Section 17(a) of the 1933 Act (15 U.S.C. § 77q(a)) and of Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b) and Rule 10b–5 thereunder); (3) purchased ABO shares while engaged in a distribution of ABO stock in violation of Section 10(b) of the 1934 Act and Rule 10b–6 thereunder.

Plaintiff moves for summary judgment, pursuant to Rule 56, F.R.Civ.P., against defendants Gottlieb and Hesse. Alternatively, plaintiff seeks an order under Rule 37(d), F.R.Civ.P., striking Hesse's answer for failure to appear and testify at a duly noticed deposition. As a further alternative, plaintiff moves pursuant to Rule 37(b), F.R.Civ.P., for an order either striking both defendants' answers and rendering judgment by default against them, or precluding said defendants from directly or indirectly introducing in evidence documents, objects or things previously ordered produced by Judge MacMahon of this Court pursuant to Rule 34, because of defendants' failure to produce same.[2]

Defendants cross-move for summary judgment against plaintiff. Their mo-

---

1. Of the thirteen original defendants herein, only the complaint as to defendants von Hesse (Hesse) and Gottlieb remain unresolved.

2. Plaintiff originally moved for an order of civil contempt against defendant Hesse for his failure to produce the ordered docu-

ments. Following Hesse's assertion of his Fifth Amendment privilege against self-incrimination as to these documents, plaintiff stated that it does not now wish to compel production, and relies instead upon its other motions herein. See Plaintiff's Memorandum in Reply to Defendant Hesse's Affidavit, April 4, 1969, p. 13.

tions are patently frivolous and without basis, and are accordingly denied without separate discussion. See SEC v. American Beryllium & Oil Corp., 303 F. Supp. 903 (S.D.N.Y.1968) (Judge McLean granted a preliminary injunction herein).

### Summary Judgment

We see no purpose served in a complete restatement of the factual allegations, largely uncontested, herein involved, particularly in view of the recital contained in Judge McLean's opinion of July 3, 1968 granting a preliminary injunction against defendants Hesse and Gottlieb among others. *Id.*

### § 5(a) and (c)

■ If defendants Hesse and Gottlieb are established to be control persons or members of a control group with regard to ABO, then based upon the uncontested facts before us there would appear to be no obstacle to holding that they violated § 5(a) and (c) by virtue of an unregistered secondary distribution of stock.[3] See United States v. Wolfson, 405 F.2d 779 (2d Cir.1968). Accordingly, whether there is a genuine issue as to defendants' control status is determinative of plaintiff's motion for summary judgment as to this count.

■ Control cannot be precisely defined, but it is understood generally to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." Securities Act Rule 405, 17 C.F.R. 230.405(f). It is a factual determination which cannot be resolved by the use of mathematical formulae; rather, resolution of the issue of control depends upon a careful appraisal of the overall effect of the various relation-

ships and other circumstances present in the particular case. See Rochester Telephone Corp. v. United States, 307 U.S. 125, 145–156, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); United States v. Re, 336 F.2d 306 (2d Cir.1964); United States v. Wolfson, 269 F.Supp. 621 (S.D.N.Y. 1967).

Control may rest with a group of persons. See 2 Loss, Securities Regulation 779–81 (2d ed. 1961). Professor Loss continues:

"It does not follow, however, that one member of such group controls in all contexts. For example, whether a secondary distribution by one member requires registration under the Securities Act raises essentially a question of fact in each case whether the person has enough influence with the group to be able to obtain the issuer's signature on a registration statement. Hence, it is for the jury when a jury sits." *Id.* at 780–81.

See also, SEC v. Micro-Moisture Controls, Inc., 148 F.Supp. 558, 562 (S.D.N.Y.1957), reargument denied, C.C.H.Fed. Sec.L.Rep. ¶ 90, 805 (S.D.N.Y.1957), final injunction, 167 F.Supp. 716 (S.D.N.Y.1958), aff'd sub nom. SEC v. Culpepper, 270 F.2d 241 (2d Cir.1959).

■ ABO's founder and president Aagaard is clearly a controlling person within the meaning of the Securities Act of 1933. See SEC v. American Beryllium & Oil Corp., 303 F.Supp. 903 (S.D.N.Y.1968). Conversely, it appears unlikely that Hesse or Gottlieb could be found to be controlling persons except by virtue of their association with Aagaard.

The evidentiary materials presented by the SEC strongly indicate that after establishing an escrow account whereby they held options on over 50,000 shares of ABO stock, Hesse and others, including to a lesser extent Gottlieb, created a

---

3. Sales of ABO were "substantial in relation to the number of shares or units of the security outstanding and the aggregate volume of trading in such security" and were well above the 1% exemption of Rule 154, 17 C.F.R. 230.154. These sales by Hesse and others therefore constituted a distribution within the meaning of § 5 of the Securities Act. In this regard, see our discussion below with respect to Rule 10b–6. See also, SEC v. American Beryllium & Oil Corp., *supra.*

market for long-dormant ABO stock, and purchased and sold such stock as part of a manipulative scheme to raise its price and profit therefrom. Other factual allegations, largely uncontested, tend towards the conclusion that Aagaard was closely associated with this group and was acting in concert with them in this secondary distribution of ABO stock.

■ Both Hesse and Gottlieb submit affidavits denying that they were members of any control group or closely associated with defendant Aagaard.[4] See Hesse Affidavit, April 3, 1969, pp. 3–4; Gottlieb Affidavit, February 3, 1969, pp. 5–6. If the uncontested underlying facts asserted by the SEC clearly establish defendants to be control persons, then defendants' conclusory protestations would be insufficient. However, the underlying evidence properly before us [5] merely tends toward a finding in plaintiff's favor on the ultimate question of control; it does not foreclose a finding that Hesse and Gottlieb were not control persons. Where, as here, the inferences to be drawn from underlying facts are fairly in dispute summary judgment is inappropriate. See Empire Electronics Co. v. United States, 311 F. 2d 175 (2d Cir.1962).

### Rule 10b–6

Rule 10b–6, 17 C.F.R. 240.10b–6, proscribes as a manipulative device purchases of securities by one engaged in a distribution of such securities.

■ A distribution within the meaning of this Rule includes a secondary distribution by security holders. See 3 Loss, Securities Regulation at 1597 (2d ed. 1961). Unlike Securities Act § 5 violations discussed above where the underwriter definition of § 2(11) of that Act is critical, there is no requirement that the person on whose behalf the secondary distribution is being made must be a controlling person or member of a control group. See Rule 10b–6(a) (2). Cf. 3 Loss, Securities Regulation at 1596, 1597 and 1599 (2d ed. 1961). The escrow account established in the summer of 1967 by Hesse and others (but apparently not Gottlieb), whereby they held options to purchase over 52,000 shares of ABO stock, provided Hesse with the pool from which the secondary distribution was to be made.[6] Hesse alone sold at least 12,500 shares of ABO stock between November 13, 1967 and March 8, 1968. See Graber Affidavit, May 10, 1968, pp. 16–19. During this same period Hesse purchased some 6,500 shares (in addition to exercising his option on 22,500 shares). *Id.*

■ We agree with the conclusion reached by Judge McLean:

"It is reasonably clear that ABO stock was not worth even the option price of $1.125 per share let alone the highly inflated price of $16.00 per share which it eventually reached as a result of these manipulations." SEC v. American Beryllium & Oil Corp., *supra*.[7]

4. Gottlieb additionally and specifically denies that he received shares from Hesse to further the alleged manipulations; rather the shares from Hesse are alleged to have been in payment of a debt. Much of the evidence implicating Gottlieb as a member of the control group is dependent upon inferences to be drawn from his position as a nominee for Hesse, which inferences are undercut by Gottlieb's allegation, if believed.

5. Certain allegations in the moving affidavit of SEC Investigator Graber, May 10, 1968, are hearsay and conclusory, not meeting the requirements of Rule 56(e), F.R.Civ.P.

6. ABO had outstanding some 654,500 shares of stock, of which some 141,487 shares were issued pursuant to a Regulation A offering, and the remaining 513,050 shares were issued for investment purposes. See Graber Affidavit, May 10, 1968, pp. 3–4 and exhibit 10A annexed thereto. ABO is traded over the counter. Trading activity in ABO stock prior to the establishment of the escrow account was negligible.

7. The call options on the over 52,000 shares deposited in the escrow account were secured at 1¢ per share. The option price was $1.125 per share. Hesse and others created an artificial market and raised the

■ We believe the undisputed facts established that Hesse (along with several associates) was engaged in a secondary distribution of ABO stock to the public, and that in the course thereof he purchased ABO shares from the public in violation of Rule 10b-6. See Bruns, Nordeman & Co., Sec. Ex. Act Rel. 6540 at 7-8 (1961); SEC v. Scott Taylor & Co., 183 F.Supp. 904 (S.D.N. Y.1959). See also, Note, 1967 Duke L.J. 809, 819-829. It was this very form of manipulative practice creating the appearance of an independent market which Rule 10b-6 sought to prohibit.

While we find Hesse in violation of Rule 10b-6, the evidence presented is insufficient to warrant summary judgment with respect to Gottlieb's alleged violation of this Rule. The extent of his association with the distributing group is not clear from the record before us.

### §§ 17(a) and 10(b)

Defendants Gottlieb and Hesse are charged with having induced certain persons through false and materially misleading statements and omissions to purchase stock in ABO.

Plaintiff has acknowledged that neither of these defendants is charged with wrongdoing in connection with the concededly false and misleading press release of March 7, 1968. See Record of preliminary injunction hearing held before Judge McLean, June 4-6, 1968, pp. 682-83, 736. From the record and papers before us we likewise do not understand plaintiff to charge that the manipulative transactions which Hesse and possibly Gottlieb engaged in to create and profit from an artificial market for ABO stock (or, for that matter, defendants' non-disclosure thereof) violated either Rule 10b-5 or § 17. See Record, *supra* at 682-684. Compare Pappas v.

Moss., 257 F.Supp. 345 (D.N.J.1966); Halsey, Stuart & Co., 30 SEC 106 (1949). Accordingly, we intimate no view whether such conduct violates those provisions. Instead, plaintiff appears to rely wholly upon certain alleged face-to-face misrepresentations by defendants to certain individuals as establishing violations of § 17(a) and Rule 10b-5.

We find it necessary to consider each defendant separately. Gottlieb, apparently conceding that he made the false and misleading statements and omissions alleged, avers:

"I believed that the statements made about the stock were true, had no means of knowing or ascertaining that there was anything untrue about such statements, and further never did anything to create any market for the stock, artificial or otherwise. I never made any false statements about the stock other than giving my honest, sincere and truthful opinion that the stock was a good investment * * *." Gottlieb Affidavit, February 3, 1969, p. 6.

■ Gottlieb has thus specifically contested one of the elements which the SEC must establish before a violation of either § 17(a) of the 1933 Act or of § 10(b) of the 1934 Act (or of Rule 10b-5 thereunder) may be found. The traditional scienter requirement remains in some form in this Circuit. See Barnes v. Osofsky, 373 F.2d 269, 272 (2d Cir. 1967). Recently, in SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 855 (2d Cir. 1968), also an action for a permanent injunction, our Court of Appeals broadened its scope, at least in connection with corporate insiders, to include lack of diligence, unreasonable or negligent conduct. Wholly innocent false or misleading statements, however, continue to fall outside the scope of these anti-fraud provisions. Gottlieb's affidavit suffices

---

price of ABO stock to as high as $16.00 per share through manipulative transactions both among themselves and with the aid of certain brokers who touted the stock to customers. It appears evident that these manipulations were for the purpose

of profiting from the difference that developed between the market and option prices. It is immaterial that as a result of the SEC investigation the distribution was never completed.

to raise a genuine issue of fact as to whether the scienter requirement has been met as to him.

Defendant Hesse, on the other hand, rests solely upon his general denial to plaintiff's complaint. His affidavit filed herein in no way contests plaintiff's allegations that he made false and misleading representations in the sale and purchase of ABO stock. If plaintiff's evidentiary materials, wholly undisputed by Hesse, meet its burden of establishing that it is entitled to judgment as a matter of law, then the moving papers are sufficient and summary judgment shall enter against Hesse on the issue of fraud.

The undisputed facts, which allegedly constitute a breach of both provisions, are as follows. Mr. Tallman, a broker, testified that in February or March of 1968, Hesse told him that ABO was negotiating for property having sulphur reserves of perhaps one to one and a half million tons, and that ABO could earn 50 to 75 cents a share in 1968 from sulphur production. Record, *supra* at 363–64, 407. These statements were half-truths at best, and were false and misleading within the meaning § 17(a)

and Rule 10b–5. See SEC v. American Beryllium & Oil Corp., *supra*.

In March of 1968, Tallman exercised an option sold him by Hesse in September of 1967 to purchase 1000 shares of ABO stock. Tallman immediately sold these shares at a price many times above the option price.[8]

On the record before us, we are unable to grant summary relief as to § 17(a),[9] since by its terms that provision applies only to fraudulent sellers. See 3 Loss, Securities Regulation at 1424 (2d ed. 1961). The fraudulent statements attributed to Hesse were not made to the public at large, but to particular individuals. No showing has been made that Hesse sold or offered shares to, or for that matter, purchased from persons he misinformed. As we see it, § 17(a) (2) was not violated. We do not find that Hesse violated § 17(a) (1) or (3) either, since the misrepresentations herein relied upon do not appear to have been "in the offer or sale of any securities." Cf. SEC v. Texas Gulf Sulphur Co., *supra* at 860.

We turn to a consideration of the application of Rule 10b–5.[10] It is

---

8. Tallman, based on certain representations made by Hesse and others with respect to silver and beryllium deposits, advised several of his customers to purchase stock in ABO. Many of these customers did purchase ABO stock. However, there is little before us as to whether these earlier statements by Hesse constituted misrepresentations in violation of the Acts, the SEC apparently basing its case upon the sulphur deposit misrepresentations instead. Accordingly, since Tallman testified that he sold out all of his customers' accounts in ABO at the time of the discussions had with regard to sulphur deposits, these customer transactions cannot be the basis for granting a motion for summary judgment as to either § 17(a) or Rule 10b–5. See Record, *supra* at 388, 395–96.

9. 15 U.S.C. § 77q(a):

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

10. Rule 17 C.F.R. 240. 10b–5 promulgated pursuant to Securities Exchange Act § 10 (b), 15 U.S.C. § 78j(b), provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make

now established that all of the elements of common law fraud need not be present to establish a violation of Rule 10b–5, particularly so in the context of an SEC injunctive suit. See SEC v. Texas Gulf Sulphur Co., 258 F.Supp. 262, 277–278 (S.D.N.Y.1966), aff'd in part and rev'd in part, 401 F.2d 833 (2d Cir.1968); Bromberg, Securities Law at 235 (1967). The elements required in this context have been stated to be:

"(1) use of jurisdictional means, (2) connection with a purchase or sale of a security, (3) misrepresentation, misleading omission, or other deception or manipulation, and (4) materiality of the misrepresentation or omission." Bromberg, Securities Law at 235.

Use of jurisdictional means (in this case both telephone and mails) is clearly satisfied here. See Record, *supra* at 362–63, 368–69; Exhibit 20 annexed to SEC's moving papers. Additionally, we have already seen that Hesse's representations to Tallman constituted misleading statements of, or omissions to state, material facts.

 The very difficult question here is whether these misrepresentations were sufficiently "in connection with the purchase or sale of any security" to satisfy that requirement. While this issue appears to be on the still-developing frontier of Rule 10b–5, we are guided in our determination by the principle that Rule 10b–5 is to be liberally interpreted to effectuate the broad remedial design of Congress. See SEC v. Texas Gulf

Sulphur Co., 401 F.2d at 860–861. See also, SEC v. Capital Gains Research Bureau, 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

 The failure of the SEC to demonstrate that Hesse's misrepresentations were related to his own purchase or sale of securities is not critical.[11] Moreover, we are of the belief that the SEC is not defeated in its suit for injunctive relief by the probable fact that Tallman did not actually rely upon Hesse's misrepresentations when purchasing and selling ABO stock.[12]

 Hesse was well aware that Tallman had previously acted upon information given him about ABO by encouraging customers to purchase its shares.

Hesse had every reason to expect Tallman to rely upon the misstatements at least to the extent of further recommending ABO to customer-investors. Under these circumstances we believe Hesse's misrepresentations, calculated to influence Tallman's own investments and in turn his recommendations to customers (even though the misstatements were not directed to the public at large in the same sense as a press release or public document), were "in connection with" the purchase and sale of securities actually effectuated by Tallman within the meaning of Rule 10b–5 (at least here in the context of an SEC suit for injunctive relief). See generally, SEC v. Texas Gulf Sulphur Co., 401 F.2d at 860; Heit v. Weitzen, *supra*. See also, Bromberg, Securities Law ¶ 7.6(1) at 190.22 and 190.23 (1969).

the statements made, in light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

11. We do not have sufficient information before us as to Hesse's purchases or sales during this period to permit us to conclude at this point that even a "semblance of privity" existed between Tallman and Hesse. It is no longer essential to the

violation of Rule 10b–5, however, that the defrauding party contemporaneously purchase or sell securities. See SEC v. Texas Gulf Sulphur Co., 401 F.2d at 860; Heit v. Weitzen, 402 F.2d 909, 913 (2d Cir. 1968).

12. Tallman, in apparent conflict with his earlier affidavit, testified at the hearing held before Judge McLean that he did not rely upon the fraudulent misrepresentations of Hesse in deciding to exercise his option to purchase ABO stock and to effect an immediate sale thereafter. Record, *supra* at 403–404.

■ It is our belief that despite the complete withering away of any requirement of privity or even the "semblance of privity," the law continues to be that proof of reliance upon the misrepresentations is not a necessary element of the violation of Rule 10b–5 where the SEC seeks injunctive relief, regardless of what may be required to maintain a private action. See N. Sims Organ & Co. v. SEC, 293 F.2d 78, 80 n. 3 (2d Cir. 1961), cert. denied 368 U.S. 968, 82 S.Ct. 440, 7 L.Ed.2d 396 (1962); Bromberg, Securities Law at 235 (1967). See also, SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 84 S.Ct. 275, 11 L. Ed.2d 237 (1963); SEC v. Texas Gulf Sulphur Co., 258 F.Supp. at 277–278.

Having sufficiently met the "in connection with" requirement of the Rule, the uncontested evidence presented by the SEC establishes that Hesse violated Rule 10b–5.[13]

Accordingly, having more than adequately demonstrated the need for the injunctive relief it seeks against Hesse to prevent further violations of Rules 10b–5 and 10b–6, the SEC is entitled to summary judgment against him as to both Rules 10b–5 and 10b–6. Cf. SEC v. Mono-Kearsarge Consol. Min. Co., 167 F.Supp. 248, 260–262 (D.C.Utah 1958).

### Refusal to Make Discovery

Since all issues herein involved have not been disposed of by summary judgment, we turn to consider plaintiff's motions pursuant to Rule 37, F.R.Civ.P.

### Hesse deposition

Plaintiff initially seeks default judgment against Hesse pursuant to Rule 37(d), for his alleged wilful failure to appear for the taking of his deposition.

On December 9, 1968, Hesse did in fact appear for the taking of his duly noticed deposition, but after being sworn and stating his name for the record, refused to answer any further questions propounded to him. He claimed that he had discharged his attorney of record, who was present with him, and requested an adjournment until new counsel could be present. The SEC refused to accede to this request, pointing out a previous substitution of counsel for Hesse and charging Hesse with deliberate delay of the discovery process. At this same time Hesse additionally appears to have raised his privilege against self-incrimination.

■ We do not find Rule 37(d) applicable under these circumstances where an appearance pursuant to notice, albeit unproductive, has been entered at the deposition. We note in passing that plaintiff has not sought an order compelling Hesse's testimony as provided for by Rule 37(a), F.R.Civ.P., and as a consequence would not be entitled to the benefits of Rule 37(b), F.R.Civ.P., with respect to the Hesse deposition.

13. The SEC presented an additional claim to the effect that Hesse violated the antifraud provisions by virtue of his statements to a Mrs. Gershen that she should hold on to her ABO stock, despite its decline in price, because the decline was due to an SEC investigation. Further, Hesse produced for her examination a copy of a suspended 1962 Regulation A offering circular, but did not tell her of its suspension by the Commission. While we have grave doubts as to whether the statement by Hesse regarding the SEC investigation was fraudulent even within the liberal terms of the Securities Exchange Act, the use of the suspended offering circular would appear to be a fraudulent device designed to induce Mrs. Gershen to refrain from selling her remaining shares. As with the Tallman misrepresentation, it seems clear these facts do not permit finding a § 17(a) violation. It would appear that the fact Mrs. Gershen has not been shown to have ever sold or purchased stock following the misrepresentation would not defeat the application of Rule 10b–5, however, for inducing her to refrain from selling has been held to suffice. See Stockwell v. Reynolds & Co., 252 F.Supp. 215, 219 (S.D.N.Y.1965). In any event, we are presented here with the same issues as to the necessity of reliance and the satisfaction of the "in connection with" clause as we faced with Tallman, for Mrs. Gershen offered her remaining shares to Hesse at the conclusion of their conversation despite Hesse's fraudulent inducements to have her retain her stock.

*Failure to produce*

Plaintiff additionally moves pursuant to Rule 37(b), F.R.Civ.P., for an order striking both defendants' answers and entering judgment by default, or, alternatively, precluding said defendants from introducing, directly or indirectly, in evidence, documents, objects or other things ordered produced by Judge MacMahon pursuant to Rule 34, F.R.Civ.P., in his opinion dated December 2, 1968, because defendants have failed to produce same.

In an order dated December 9, 1968, Judge MacMahon required that the documents be produced for inspection and copying by the SEC on or before December 18, 1968. Additionally, defendants were ordered to provide the SEC at the time of the production of documents with an affidavit attesting that they did not have within their custody or control any other documents demanded by the SEC.

Neither defendant complied with this order. On December 26, 1968 in the course of his deposition and in response to a question by the SEC, Gottlieb pleaded his privilege against self-incrimination in refusing to produce the ordered documents. Later, in an affidavit dated February 3, 1969, Gottlieb averred that "he does not have the documents, objects or things ordered produced." In an affidavit dated April 3, 1969 Hesse asserted his Fifth Amendment privilege by way of explanation for his failure to produce. None of this in any way excuses their failure to raise the asserted privilege before Judge MacMahon or to at least respond on or before December 18, 1968, as ordered.

Plaintiff appears to concede that the circumstances do not warrant the entry of judgment by default, and calls instead for an order granting the alternative relief sought. See Plaintiff's Reply Memorandum of April 4, 1969 at 13. See generally, 4 Moore, Federal Practice ¶ 37.03 [1] (2d ed. 1968). In the light of defendants' claims that the documents are self-incriminatory, we find the requested alternative relief of precluding defendants from introducing them into evidence particularly appropriate.

*The Instant Dispositions*

1. Plaintiff is entitled to summary judgment pursuant to Rule 56, F.R.Civ.P., enjoining Hesse from violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 and 10b–6 promulgated thereunder. Plaintiff's motion for summary judgment is denied in all other respects. We have in the course of this opinion specified the facts that appear without substantial controversy and delineated the issues remaining herein, pursuant to Rule 56(d), F.R.Civ.P.

2. Pursuant to Rule 37(b) (2) (ii), F.R.Civ.P., defendants are precluded from directly or indirectly introducing in evidence documents, objects or other things ordered produced under Rule 34, F.R.Civ.P.

This shall be considered an order; settlement thereof is unnecessary.