## IN RE GRAND JURY SUBPOENA.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**(UNDER SEAL), Defendants–Appellants.**

**No. 87–5565.**

United States Court of Appeals,
Fourth Circuit.

Argued July 31, 1987.

Decided Jan. 12, 1988.

Rehearing and Rehearing En Banc
Denied March 18, 1988.

Eugene Propper (Lane & Edson, P.C. on brief); Anne Davies Smith (White & Case; John R. Fornaiciari; Mark H. Tuohey, III; Kenneth A. Grigg; Pierson, Ball & Dowd, Washington, D.C., on brief), for defendants-appellants.

Barbara Slaymaker Sale, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty.; Baltimore, Md., Joyce K. McKee, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Four third-party deponents in a civil action in the Eastern District of Virginia appeal from a judgment of the district court of Maryland denying their motion to quash two grand jury subpoenas issued by a special grand jury in Maryland to an attorney in Virginia requiring production of their sealed depositions taken during the civil litigation in Virginia. The appellants-deponents moved to quash the subpoenas in the district court of Maryland on the ground that the depositions were sealed by a protective order issued by the district court in Virginia. The district court of Maryland denied the motion to quash, concluding that a civil protective order cannot be used to shield discovery materials from a subpoena issued by a grand jury. We affirm.

I.

A special grand jury in the district of Maryland is investigating the events surrounding the collapse in September, 1985, of Community Savings & Loan (Community), which was part of a group of affiliated organizations whose parent corporation is Equity Programs Investment Corporation (EPIC). The appellants-deponents in this case are former officers and directors of EPIC and its subsidiaries. In 1985, the state of Maryland placed Community into conservatorship and EPIC filed for bankruptcy. Subsequently, several private mortgage insurance companies which had insured mortgages held by EPIC brought suit in the Eastern District of Virginia

against EPIC Mortgage, Inc. (a subsidiary of EPIC), numerous banks, and the Maryland Deposit Insurance Corporation, the conservator for Community. The appellants-deponents are not parties to the litigation in the Eastern District of Virginia.

In 1986, plaintiffs in the civil action in Virginia noticed the depositions of the appellants. Some of these deponents became concerned about complying with this order because of the ongoing grand jury investigation in Maryland. The deponents moved for a stay of discovery pending completion of the grand jury investigation in order to avoid being forced to choose between the possibility of self-incrimination and asserting their fifth amendment rights. After a hearing, the Virginia district court denied the motion for a stay. With the consent of all parties and the deponents, the court instead orally issued a protective order sealing the deposition transcripts and limiting access to the transcripts to the parties in the civil action. The district court requested that the parties prepare a written protective order for the district court to consider. The parties submitted the written order to the district judge on October 8, and it was signed the next day.[1]

The written protective order sealed deposition transcripts that were filed with the court and limited access to these transcripts to necessary court personnel, the deponents, and the parties to the civil action and their counsel. The protective order specifically stated:

IT IS FURTHER ORDERED that the transcript or record of the sealed depositions and the information contained therein shall not be made available to any state or federal investigating agency or authority, and shall not be used in

1. Two of the appellants-deponents were deposed following issuance of the oral protective order, but before the written order was signed. The other two deponents were deposed in November following issuance of the written order. Prior to their November depositions, the attorneys for the two deponents obtained oral stipulations from all counsel in the civil action that the depositions were sealed under the terms of the protective order. In February, the district court signed an order confirming the oral stipulation sealing the November depositions. The government maintains on this appeal that the appellants who were deposed prior to entry of the written protective order were not entitled to rely on the protective order in waiving their fifth amendment privilege because the oral protective order had not yet been reduced to a writing. The district court made no findings in this regard. However, we need not reach this factual issue in light of our disposition of the legal question of whether a civil protective order may provide grounds to quash a grand jury subpoena.

connection with any proceedings other than these actions, except by further order of this Court.

The protective order also provided for possible modification:

IT IS FURTHER ORDERED that this Order may be modified only by further order of this Court or any other court having jurisdiction over the trial of any of these cases upon notice to the deponents and the parties to this case with reasonable opportunity to respond.

In late 1986, following the taking of these depositions, the Assistant United States Attorney guiding the special grand jury investigation in Maryland requested copies of the deposition transcripts in the Virginia litigation from an attorney for a defendant in that action. The attorney provided the grand jury with the requested materials, except for those depositions sealed by the protective order. On December 16, 1986, the grand jury issued a subpoena duces tecum requiring an attorney for the plaintiffs in the Virginia action to produce the deposition transcripts of two of the appellants in this action. On January 21, 1987, the grand jury issued a second subpoena requiring an attorney to produce the deposition transcripts of the remaining appellants. Appellants subsequently filed their motion to quash.

Following a hearing on the motion to quash, the deponents, at the request of the Maryland district judge, scheduled an appearance before the Virginia district court in order to clarify the protective order. During that hearing, the district judge in Virginia explained that the protective order was intended to bar access to the transcripts by the Maryland grand jury and that the deponents were entitled to rely on the order to protect their fifth amendment rights. The government subsequently stipulated that the protective order was intended to apply to the Maryland grand jury. On April 21, 1987, the district court of Maryland denied the motion to quash.

## II.

The appellants seek to employ a civil protective order as a defense against compliance with a grand jury subpoena demanding production of deposition transcripts obtained during discovery in a civil action to which they were not parties. The issue of the need to comply with the grand jury subpoena is properly before this court. The government had two options in seeking to obtain the deposition transcripts: it could seek permissive intervention in the civil action in Virginia pursuant to Fed.R. Civ.P. 24(b) to request that the protective order be modified or vacated, or it could subpoena the transcripts as part of the ongoing grand jury investigation. *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291, 294 (2 Cir. 1979). The government validly chose the latter course in this action.[2]

The issue presented in this case is an important one of first impression in the circuit courts concerning the legal authority of the grand jury. The Maryland district court denied the motion to quash the subpoena on the ground that it lacked the authority to quash the grand jury's subpoena *duces tecum* notwithstanding that the deposition transcripts sought to be obtained were sealed under the terms of a valid civil protective order issued by another federal district court. In reaching this decision, the Maryland district court assumed that the deponents relied on the protective order during the taking of depositions and that the protective order was validly issued. The district court appropriately framed the legal issue for consideration, and we agree with its conclusion.[3]

---

2. The appellants were entitled to appeal the district court's denial of their motion to quash the subpoena without risking contempt because the subpoena was addressed not to them, but to an attorney in the Virginia litigation. *Perlman v. United States*, 247 U.S. 7, 13, 38 S.Ct. 417, 419, 62 L.Ed. 950 (1918).

3. The government's primary contention on appeal is that the Virginia district court erred by entering a protective order to protect the fifth amendment rights of the deponents. The Maryland district court did not consider this contention and we do not address it. This contention should properly be advanced to the Virginia district court in the first instance because it

The question of the grand jury's authority presented in this case involves the intersection of three interests: the authority of a grand jury to gather evidence in a criminal investigation; the deponents' right against self-incrimination; and the goals of liberal discovery and efficient dispute resolution in civil proceedings. We begin by discussing these respective interests.

### A.

The sweeping power of the grand jury to compel the production of evidence has been recognized since the nation's founding. *Blair v. United States*, 250 U.S. 273, 280, 39 S.Ct. 468, 470, 63 L.Ed. 979 (1919). Federal grand juries derive the authority to investigate criminal wrongdoing by requiring testimony and the production of documents from the United States Constitution, the Federal Rules of Criminal Procedure, and federal statutes. U.S. Const., Amend. V; Fed.R.Crim.P. 6; 18 U.S.C. §§ 3321 *et seq.*

The grand jury has the authority to require the production of evidence and testimony of witnesses because "the public ... has a right to every man's evidence." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). While grand jury investigations are subject to constitutional limits, the grand jury has wide latitude in gathering evidence because this power is essential to the task of criminal investigations. Thus, the grand jury's power to investigate criminal offenses is "unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). The grand jury has the right to obtain and consider all evidence relevant to its deliberations because the nature of the crime and the identity of the accused must be ascertained based upon this evidence at the conclusion of the grand jury's inquiry. *Blair*, 250 U.S. at 282, 39 S.Ct. at 471. Because the grand jury enjoys important constitutional

status, the grand jury is not subject to the direction of the court with respect to these essential functions. *United States v. United States District Court*, 238 F.2d 713 (4 Cir.1956), *cert. denied sub nom., Valley Bell Dairy Co. v. United States*, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957). As a result, a court may not intervene in the grand jury process absent compelling reason. *United States v. Dionisio*, 410 U.S. 1, 16–18, 93 S.Ct. 764, 772–773, 35 L.Ed.2d 67 (1973); *In Re Grand Jury Subpoenas, April, 1978 (Harvey)*, 581 F.2d 1103, 1108 (4 Cir.1978), *cert. denied sub nom., Fairchild Industries, Inc. v. Harvey*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

### B.

■ The grand jury subpoena in this case seeks discovery materials which, we assume for purposes of this appeal, were produced in reliance on the Virginia district court's protective order. At first blush, resolution of this case might appear to depend on balancing the deponents' right against self-incrimination as secured by the protective order and the grand jury's interest in effective investigation of crime. But this is not so, because the deponents' fifth amendment right against self-incrimination did not require, nor may it depend on, the shield of civil protective orders. Deponents were entitled to rely only on their own silence or a grant of immunity to protect their rights, otherwise they risked waiving those rights.

In contrast with a grant of immunity, the government may not use a protective order to compel a witness to testify during a criminal or civil proceeding. Absent a grant of immunity, the deponents were entitled, with or without a protective order, to assert their fifth amendment privilege in answer to potentially incriminating questions in a civil proceeding. In *Pillsbury Co. v. Conboy*, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983), the Supreme Court established this principle by reversing a contempt order entered against a civil liti-

concerns the validity of its civil protective order and does not concern the authority of the grand jury's subpoena.

gant who had not received a grant of immunity and who asserted his fifth amendment privilege against self-incrimination in deposition testimony. The Court ruled that a party to a civil action has a right to assert the privilege until immunity is granted by officials of the Department of Justice. *Id.* at 261, 103 S.Ct. at 616.

Deponents argue that the burden of silence in civil litigation may unduly punish an individual for asserting the right against self-incrimination. A party's silence, for example, may bar that party from asserting facts which would allow him to prevail in litigation which will have severe financial consequences for the loser. Silence may also create inferences which are relevant and adverse to the party maintaining such silence. On the facts of this case, these concerns are remote because the deponents had no stake in the outcome of the civil litigation.

Even if such a risk were present, however, the burden placed on an individual's right to avoid self-incrimination by the institution of a civil lawsuit by a private party does not implicate values protected by the fifth amendment. In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), for example, the Supreme Court held that the fifth amendment privilege does not protect state prison inmates against the drawing of adverse inferences from the failure to testify during disciplinary proceedings which could result in punitive action. The Court, in part, relied on the prevailing rule that "the fifth

amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Id.* at 318, 96 S.Ct. at 1558. Justice Brennan, joined by Justice Marshall, dissented from the conclusion that the fifth amendment privilege did not extend to prison disciplinary hearings, but agreed that he would "have difficulty holding such an inference impermissible in civil cases involving only private parties." *Id.* at 334, 96 S.Ct. at 1566 (Brennan, J., dissenting).[4] *See Lefkowitz v. Cunningham*, 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977).[5] Thus, the security given to the deponent's interest in avoiding self-incrimination by a civil protective order does not outweigh the substantial government interest present in this case.[6]

### C.

While protective orders do not significantly advance fifth amendment interests, they do aid the civil courts in facilitating resolution of private disputes. Federal Rule of Civil Procedure 26(c) authorizes the district courts to issue protective orders to encourage full disclosure of all relevant evidence in order to "secure the just, speedy, and inexpensive determination" of civil disputes. Fed.R.Civ.P. 1. Absent such orders, witnesses would be deterred from providing essential testimony in civil litigation, thus undermining the adversary process. *Martindell*, 594 F.2d at 295.

---

4. In many civil cases the burden placed on a person's silence may be unavoidable. Where a plaintiff has gathered sufficient evidence to establish a claim prior to discovery, a defendant who risks incrimination by speaking will inevitably face the choice of forsaking silence or losing a civil judgment, even if the defendant's silence is not used against him. *See* 8 Wright & Miller, Federal Practice & Procedure § 2018 & n. 49 (1970). A plaintiff whose claim requires incriminating testimony will likewise always face the choice of speaking or forsaking his prayer for redress. In either case, a district court may reduce the risk of a party's silence by not dismissing an action for failing to cooperate with discovery, but the party will nonetheless face the inevitable judgment of the trier of fact who must make a decision based on an imbalanced presentation of the evidence.

5. *See also National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 929 (7 Cir.1983) ("After *Baxter* there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination").

6. Fifth amendment and ethical concerns obviously would be raised, however, if the government directly or indirectly sponsored a civil lawsuit or discovery requests in a civil lawsuit for the purpose of aiding a criminal investigation. *See United States v. Kordel*, 397 U.S. 1, 10–11, 90 S.Ct. 763, 768–769, 25 L.Ed.2d 1 (1970). There is no allegation in this case of such an improper purpose.

Assertion of the privilege against self-incrimination may disrupt or thwart civil litigation and discovery in a wide variety of cases. The privilege may slow or thwart the efficient resolution of many civil cases because the privilege applies not only to information which is itself incriminating but also to information relevant to civil liability which provides a clue leading to evidence of criminal conduct. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (privilege applies if a response might provide a clue leading investigators to discover facts that could constitute links in a chain of circumstantial evidence proving criminal misconduct). Thus, the privilege may apply in antitrust litigation, commercial litigation and securities actions involving fraud, personal injury actions involving criminal negligence, or civil rights actions involving assault, because these civil actions may elicit information tending to demonstrate the element or elements of a crime. *See, generally*, Heidt, The Conjurer's Circle: The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062, 1065–1071 (1982).

The assertion of the privilege against self-incrimination in civil cases can impose severe burdens on civil litigants.[7] Invocation may occur in the answer to a complaint or in response to interrogatories, deposition questions, or requests for admissions. The assertion of the privilege prior to trial may thus significantly reduce a party's chances of prevailing on the merits of his claim. The lack of direct access to such information may also prolong civil litigation and increase its costs. As a result, assertion of the privilege forces civil litigants to share the cost of the right to silence of the individual asserting the privilege.

We must therefore weigh the extent to which protective orders insure the efficient resolution of civil disputes against the interest of obtaining all relevant evidence during a grand jury's criminal investigation.

### III.

While no court of appeals has directly addressed the issue in this case, there is a line of cases in the Second Circuit, relied on by both parties, which discusses the principles at stake here. The first, *Martindell v. International Telephone and Telegraph Corp.*, *supra*, concerned an informal government request to a federal district court for copies of deposition transcripts which were the subject of a Rule 26 protective order. The court affirmed the district court's decision to deny the request, concluding that the interest in protecting efficient resolution of civil disputes outweighed the interest of the government in effective law enforcement when such interest was expressed "simply by picking up the telephone or writing a letter to the court." 594 F.2d at 294. The court in *Martindell*, however, did not express an opinion on how these interests should be balanced when a grand jury subpoena seeks to override a valid protective order. 594 F.2d at 296 n. 5 & 6.

In *United States v. GAF Corporation*, 596 F.2d 10 (2 Cir.1979), the Second Circuit dealt with an attempt by federal antitrust prosecutors to obtain information covered by a civil protective order through enforcement of a civil investigative demand (CID,) issued under the authority granted to the Department of Justice by the Antitrust Civil Process Act of 1976, 15 U.S.C. § 1312. The court enforced the CID, relying on the authority given by the statute to federal prosecutors to seek such information. *GAF Corporation* supports enforcement of the subpoena here because the scope of the grand jury power under the Constitution and federal law is at least as broad as that granted by the federal antitrust statute.[8]

---

**7.** In this case, for example, the district court in the Eastern District of Virginia issued a protective order because of this concern:

> But after making the determination that I require these people to testify, I entered a protective order, with the understanding that this would satisfy their concerns with the fifth

amendment privilege, allowing this very complicated piece of litigation to go on.

**8.** Generally, government agencies have subpoena power which is limited by statute. *E.g.* 15 U.S.C. § 1312 (authorizing subpoenas for documentary material or information "relevant to a

The next case considered by the Second Circuit, *United States v. Davis*, 702 F.2d 418 (2 Cir.1983), *cert. denied sub nom, Veliotis v. United States*, 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983), involved a grand jury subpoena of documents produced in discovery during pending civil litigation which were protected by an informal understanding that the documents were confidential. The parties never reduced this understanding to writing or made it the subject of a protective order. 702 F.2d at 422. In that case, the court concluded that the interest in law enforcement evidenced by a grand jury subpoena outweighed the interest in confidentiality in civil litigation expressed in a purely informal agreement. *Id.* By contrast, the deponents' interest in confidentiality in the case before us was made the subject of a written protective order on which the deponents' were intended to rely.

Most recently, in *Palmieri v. New York*, 779 F.2d 861 (2 Cir.1985), the court considered a motion by the government to intervene in a civil antitrust action to modify two protective orders to allow the state Attorney General and a grand jury to have access to a confidential settlement agreement and to hear evidence regarding this agreement. The court held that, absent a finding of improvidence in the magistrate's grant of the protective orders, or of extraordinary circumstances or compelling need for the protected information, the district court could not modify the protective order to allow such access to the confidential documents. Procedurally, *Palmieri* differs from our case, because *Palmieri* involved a motion for intervention to modify a protective order. However, the procedure used to avoid the proscription of a protective order should not alter the substantive balancing of interests which must be conducted. In *Palmieri,* the court concluded that the interest in ensuring efficient resolution of civil disputes expressed in Rule 26 outweighed the interest of law enforcement, including a grand jury investigation, absent a showing of compelling need for the demanded materials. While *Palmieri* might be distinguished from our case because the interest in facilitating resolution of private disputes has traditionally kept settlement agreements from the public eye, the principles in *Palmieri* which supported the authority of a civil protective order would still militate in favor of upholding the protective order here in the face of the grand jury's subpoena.[9] As a result, the *Palmieri* decision is difficult to reconcile with the Second Circuit's earlier decision in *GAF Corporation,* which favored the interests of law enforcement in analogous circumstances.

## IV.

With these principles in mind and the light shed on them by the Second Circuit, we conclude that the balance in this case must be struck in favor of the grand jury's need to gather evidence. Balancing of the competing interests in this case favors enforcement of the grand jury's subpoena. A grand jury, subject only to the limitations of a fifth amendment, has the right to all relevant evidence. A protective

civil antitrust investigation"). By contrast, process issued by a grand jury can be virtually unlimited, without a requirement of showing relevance or materiality as a condition of enforcement. *United States v. Dionisio,* 410 U.S. 1, 9–13, 93 S.Ct. 764, 769–771, 35 L.Ed.2d 67 (1972).

9. We mention one final case from within our circuit because it deals directly with the issue presented here. Judge Merhige, in an unpublished opinion, *United States v. Doe,* Civ. No. 79–0073–A–R (Slip Op.) (E.D.Va. March 28, 1980), considered a motion by a group of deponents to quash a grand jury subpoena which requested documents and deposition transcripts sealed under a protective order. Judge Merhige denied the motion, reasoning that "the policy of having possible criminal activity that may have occurred in connection with the civil litigation investigated by a grand jury far more benefits the general public than the need to encourage witnesses and parties to be more cooperative in civil litigation." Judge Merhige concluded: "This Court will not sit idly by and permit its civil processes and orders to be utilized as a shield against either a valid investigation or prosecution of those who may have violated the criminal laws of the United States during the course of civil litigation. To do otherwise would be to suggest that perjury as an example could be committed under such circumstances with impunity."

order, while a significant impediment to a grand jury investigation, cannot effectively deal in all instances with the problems posed by civil litigants and witnesses who plead the fifth amendment during pretrial discovery. It is not therefore a substitute for invocation of the privilege, and it should not be afforded that status.

A civil protective order may seriously impede a criminal investigation by a grand jury. Uncoerced testimony given in a civil action may provide important and relevant information to a grand jury investigation.[10] In addition, the government has an interest in obtaining this information for purposes of impeachment should the deponents testify in a manner materially inconsistent with their deposition testimony in any future criminal trial. Finally, protective orders may cause the absurd result of shielding deponents from prosecutions for perjury because, while evidence of perjury would certainly be cause for modifying a protective order, the protective order itself impedes an investigation that might lead to cause for believing that perjury has occurred.[11]

In addition, a protective order issued by a civil court for the purpose of protecting a deponent's fifth amendment privilege if given paramount effect would usurp the proper authority of the executive branch to balance the public interest in confidentiality against the interest in effective criminal investigation. For this reason, the power to apply to a court for a grant of immunity is limited to the United States Attorney under federal law. 18 U.S.C. § 6003; *Pillsbury v. Conboy, supra.* A trial court has no authority to grant immunity to a witness on its own motion. *United States v. Klauber,* 611 F.2d 512, 517 (4 Cir.1979), *cert. denied,* 446 U.S. 908, 100 S.Ct. 1835,

64 L.Ed.2d 261 (1980). The Supreme Court has upheld the constitutionality of the provisions of the federal immunity statute authorizing judicial oversight of grants of immunity only because a court's duty under the statute is limited to ascertaining whether the government has complied with the technical requirements for a grant of immunity. *Ullmann v. United States,* 350 U.S. 422, 434, 76 S.Ct. 497, 504, 100 L.Ed. 511 (1956). *See Kastigar v. United States,* 406 U.S. 441, 448, 92 S.Ct. 1653, 1658, 32 L.Ed.2d 212 (1972) (reaffirming *Ullmann* ).

These limitations on judicial power thus counsel against authorizing district courts to give civil deponents *de facto* grants of immunity in the guise of Rule 26 protective orders.[12] The deponents here, in seeking a civil order on which they could rely to protect their privilege against self-incrimination, desired such a *de facto* grant of immunity. This circuit has properly refrained from allowing such judicial intervention into executive prerogatives.

> The public suffers when a criminal is not prosecuted, and this detriment must be weighed carefully against the public benefit that will accrue from the information which immunity can compel. The balancing of these interests has not been left to persons unanswerable to the public.

*In Re Kilgo,* 484 F.2d 1215, 1222 (4 Cir. 1973). *Accord United States v. Klauber,* 611 F.2d at 520.

Another consideration is that while a protective order, if given full effect, would impede the investigating function of a grand jury, it is not totally effective in furthering the civil court's interest in facilitating discovery. Of course, a protective order may encourage deponents to provide

---

10. It is misguided to contend that the government's ability to gather *other* evidence of criminal misconduct undermines this interest. The grand jury has the right to gather all relevant evidence.

11. Sealing the discovery process in civil proceedings also sacrifices the traditional interest of the public in obtaining access to civil proceedings. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 31, 104 S.Ct. 2199, 2206, 81 L.Ed.2d 17 (1984) (public interest in civil process re-

quires party seeking protective order to show good cause for entry of this order); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1118–21 (3 Cir.1986).

12. Separation of powers principles also counsel courts against intervening in a criminal investigation being conducted by a grand jury. *Reporters Committee v. AT & T,* 593 F.2d 1030, 1065 (D.C.Cir.1978).

relevant evidence because the order reduces the risk that incriminating information will be brought to the attention of law enforcement officials. However, an individual may not totally rely on judicial protection against the use of incriminating information without a grant of immunity. 8 Wright & Miller, Federal Practice & Procedure at § 2018 ("whether the court, in a civil action, can provide protection equivalent to an immunity statute, as is needed if the claim of privilege is to be overcome, seems doubtful"). Even with a protective order in place, incriminating statements still create the risk that parties to a civil action will leak sealed information or materials to relevant law enforcement authorities. In the event of a leak of information to law enforcement authorities, a protective order, unlike a grant of immunity, provides no assurance that incriminating statements will not be used against a deponent in a criminal proceeding or that the statements will not be used to obtain other relevant evidence. Moreover, a protective order, such as the order in this case, is normally subject to modification under Rule 26 for sufficient cause.

In addition, a protective order cannot serve as more than a stopgap measure to seal discovery materials. Incriminating information will normally be disclosed at trial even if the information is effectively suppressed prior to that time. The temporary benefit of pretrial secrecy will not appeal to many individuals as a substitute for formal immunity or cause them to cooperate with civil discovery motions by waiving their fifth amendment privilege. In addition, as we have previously shown, a protective order does not alter an individual's right to assert his fifth amendment privilege. Finally, to the extent that protective orders shield deponents from the risk of investigations into possible perjury, it is questionable whether such orders serve the interest of fair resolution of civil disputes.

Apart from a protective order, a civil court has available other tools to ensure successful resolution of a civil action which is threatened by a deponent's privileged silence. See, generally, Heidt, The Conjurer's Circle, supra, at 1107–32. One commonly used alternative to allay the fears of a deponent is to delay discovery until a pending grand jury investigation has been completed. See Shaffer v. United States, 528 F.2d 920, 922 (4 Cir.1975) (stating a preference for stays in such cases). Such a stay, which was denied by the Virginia district court in this case, has the salutary effect of minimizing the conflict between criminal investigations and fair discovery in civil litigation. In addition, in a few cases, a pretrial hearing by the district court into the validity of a claim of self-incrimination may expose fanciful or frivolous assertions of the privilege. See Bathalter, 705 F.2d at 927. At trial, the trier of fact may also use the silence of a deponent for relevant inferences that it creates. Lefkowitz, 431 U.S. at 808 n. 5, 97 S.Ct. at 2137 n. 5 (constitutionally protected silence may be considered for its probative value in a civil case). See also Palmigiano, supra; United States v. White, 589 F.2d 1283, 1286 (5 Cir.1979).[13]

In some cases, invocation of the privilege by a party may justify shifting the burden of proof in a civil action in accordance with the doctrine that the burden of proof should be placed on the party who is in the best position to provide relevant proof. See United States v. New York, New Haven & Hartford Railroad Company, 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 214 n. 5, 2 L.Ed.2d 247 (1957); Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 111, 62 S.Ct. 156, 161, 86 L.Ed. 89 (1941). E.g., Ybarra v. Spangard, 25 Cal. 2d 486, 154 P.2d 687 (1944). The trial court should consider such action only when invocation of the privilege appears to have contributed substantially to a party's failure of proof. But, in some cases, use of the traditional rules of burden-shifting may allow

---

**13.** In deciding whether to admit a deponent's silence as relevant evidence of a material fact, a trial judge, of course, has discretion to consider unfair prejudice to a party who risks losing a civil judgment or giving incriminating testimony that may result from admission of such evidence. F.R.Ev. 403.

civil litigation to proceed in the face of silence during discovery.

Finally, to avoid invocation of the privilege aimed at thwarting discovery, testimony waiving the privilege against incrimination during trial might be excluded where the privilege was asserted in response to questions during discovery. *E.g. SEC v. American Beryllium & Oil Corp.*, 303 F.Supp. 912, 921 (D.C.N.Y.1969) (barring introduction of documents into evidence when party failed to produce documents during discovery based on an assertion of fifth amendment privilege). Exclusion, like a protective order, would be justified under Rule 26 which authorizes a court to issue such orders as may be needed to protect a party from oppression.

In summary, a district court has alternatives available to encourage parties to comply with the goal of liberal discovery short of entry of a protective order. Where discovery is nonetheless impeded by a genuine fear of future prosecution, these alternatives also provide tools for resolution of private disputes in the face of pretrial silence. In cases such as this one, where deponents to a civil action are not parties to the suit, these devices will not burden the exercise of the constitutional right to silence. In other cases involving deponents who are parties to an action, these alternatives may burden a parties' decision to maintain silence due to the risk of self-incrimination, but such burden in the civil context, where equitable under the circumstances, does not implicate values with which the fifth amendment is concerned.

## V.

In our view, a reasonable balancing of the respective interests of the civil courts and grand jury investigations favors enforcement of a grand jury subpoena despite the existence of an otherwise valid protective order. Deponents suggest, however, that the per se rule favoring enforcement of a grand jury subpoena which we adopt is unwarranted. They suggest that a case-by-case approach of balancing these competing interests would be appropriate, with the right on the part of the government to seek modification of a protective order upon a showing of compelling need under Rule 26. The deponents find some support for this contention in the *Palmieri* case. *Supra.*

Only rarely could ad hoc balancing of the interests at stake here be effectively performed at the time of original entry of the protective order. A civil court may issue a protective order under Rule 26(c) upon the motion of a party to the litigation. A desire to protect commercial information or trade secrets may motivate a request for a protective order. In most cases, a court would be left to balance the needs of law enforcement against the concerns of the parties without government officials being present to state their interests in the matter. In the Virginia litigation in this case, the court did not even consult with the United States attorney before entering a protective order and, not unexpectedly, the parties to the Virginia litigation all favored issuance of a protective order. It is not surprising, therefore, that issuance of protective orders in civil litigation has become almost routine.[14] This trend cannot result in an effective balancing of the interests which are at stake in this case.

If, however, courts are capable of fairly examining the disparate interests of law enforcement and of the civil courts in individual cases, the adoption of a case-by-case approach of judicial review of protective orders or orders denying modification of protective orders will still have the effect of undermining both of these interests. The adoption of a compelling need test for disclosure of sealed discovery materials would deprive federal grand juries of relevant evidence in some cases. Despite the availability of protective orders, however, parties with self-incrimination concerns would still have the option of resisting discovery requests by asserting their fifth amendment privilege. *Pillsbury v. Con-*

---

**14.** *See* Marcus, Myth and Reality in Protective Order Litigation, 69 Cornell L.Rev. 1, 218 (1983); *United States v. Doe, supra.*

*boy, Supra.* Uncertainty about the ultimate outcome of a protective order will mean that no deponent may always effectively rely on a protective order to secure his right against self-incrimination. Only an absolute, unmodifiable protective order could thus hope to provide the civil courts with a tool to entice deponents to forsake their right to assert a fifth amendment privilege.[15]

Most importantly, even if the courts were in a position to balance correctly the needs of criminal investigations and the fifth amendment concerns of persons involved in civil litigation, the courts lack the constitutional authority to engage in such an exercise. *Supra.* As we have stated, the balancing of the interests of law enforcement against other needs is properly for the executive department. It, alone, has the right to determine whether to immunize a witness. *United States v. Klauber, supra; In Re Kilgo, supra.*

It should be noted also that a rule permitting a protective order to prevail over a grand jury subpoena in some instances could easily become a tool for delaying criminal investigations. Parties who are the subject of a grand jury investigation and who are involved in civil litigation would, of course, often seek protective orders in such instances. The government would undoubtedly choose to intervene in civil actions to obtain this relevant evidence. Even if the government ultimately prevailed, this additional litigation would delay the grand jury investigation, and possibly for no purpose, because unsealing protected materials might only reveal that the deponents asserted their fifth amendment privilege during discovery despite the existence of the protective order.[16]

For these reasons, we affirm the district court's judgment denying the motion to quash. We hold that the existence of an otherwise valid protective order was not sufficient grounds to quash the subpoena duces tecum issued by the Maryland grand jury.

AFFIRMED.

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent. Chief Judge Winter for the majority has written fairly and comprehensively of the conflicting public interests underlying the issues in this appeal. I disagree, however, with the majority's resolution of the conflict.

I

In my view, the principal issue is the same as that presented in *Palmieri v. State of New York,* where the Second Circuit observed that "[t]his case lies at the juncture of two competing imperatives in our judicial system: the need of a ... grand jury to gather evidence for ongoing criminal investigations, and the need of our district courts and civil litigants to facilitate efficient resolution of disputes ..." 779 F.2d 861, 864 (2d Cir.1985). *Palmieri* upheld a protective order against a government attack because, among other reasons, litigants in our civil justice system must be able to rely on assurances of confidentiality given by trial judges.[1] The Second Cir-

---

**15.** Note, Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions, 98 Harv.L. Rev. 1023, 1037–38 (1985) ("Uncertainty about the likelihood of modification can be great because courts use an unpredictable balancing test to decide whether to modify orders.... Without formal immunity, an accused would be reluctant, and perhaps foolish, to submit to discovery"); Note, Nonparty Access to Discovery Materials in the Federal Courts, 94 Harv.L.Rev. 1085, 1104 (1981) ("The argument that a deponent will not invoke his privilege if the deposition is governed by a rule 26(c) protective order is surely fallacious").

**16.** For example, at the conclusion of the litigation in the *Martindell* case, *supra,* the record

indicated that the deponents in that case had invoked the privilege during depositions although they vigorously litigated the authority of the protective order to bar government access to the deposition transcripts. *See* Note, Nonparty Access to Discovery Materials, *supra,* at 1104.

**1.** The potentially self-incriminating deposition testimony at issue here makes this a stronger case for denying the government access than presented in *Palmieri.* In that case, the grand jury issued a subpoena ad testificandum and the government sought a modification of the protective order to require Palmieri to testify concerning a protected settlement agreement and to gain access to the settlement negotiations and terms.

cuit's longstanding emphasis on the importance to civil discovery of upholding protective orders reflects my views.

[T]he vital function of a protective order issued under Rule 26(c), F.R.Civ.P. ... is 'to secure the just, speedy and inexpensive determination' of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences.

* * * * *

[A]bsent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need ... a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and ... such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation....

*Martindell v. International Telephone & Telegraph,* 594 F.2d 291, 295, 296 (2d Cir. 1979); *see also Palmieri,* 779 F.2d at 864–865 (and cases cited therein).

The deponents here would not have provided the deposition testimony but for their reliance on the district court's statement that the testimony would be beyond the government's reach. In balancing the grand jury interest against the interest in supporting the integrity of a judicial guarantee and the purposes promoted by Rule 26, I am not persuaded that the grand jury interest here establishes a compelling need to breach the protective order.

The majority eschews discrete balancing of competing interests and creates a per se rule overriding Rule 26(c) protective orders when opposed by grand jury subpoenas. It reaches this result by balancing abstract concepts rather than the facts of each case. In the process I feel it has swept away a long-standing tool for the management of civil litigation. Litigants relying on protective orders offer a significant amount of evidence in civil cases, but our ruling today will squelch the desire of future deponents to give evidence under a protective order. No longer will deponents be able to rely on the power of a United States District Court to limit disclosure of their testimony to third parties. The government will become a new player in the civil discovery process, forcing deponents to invoke the fifth amendment and thus retarding effective and informative discovery.

## II

While agreeing generally with what the majority has written concerning the invocation of the fifth amendment privilege, I nevertheless feel that the outcome it reaches permits an end run by the government around these deponents' privileges against self-incrimination. The deponents possessed information that would help resolve civil litigation but refrained from disclosing it because of their apprehension that it would be transmitted to the grand jury. They testified only in reliance on the district court's pledge to protect their potentially self-incriminating remarks from the grand jury.

The grand jury has awesome investigatory powers and, as the majority correctly notes, it operates on the principal that the public has a right to everyman's evidence. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). Rather than counterbalancing the use of protective orders as suggested by the majority, however, the great reservoir of power reposed in the grand jury represents an additional reason for enforcing such orders.[2]

**2.** As the Seventh Circuit has observed, "the explicit grant of such extensive investigative powers should be construed to preclude the implica-

tion of supplemental powers, absent unusual circumstances." *Wilk v. American Medical Association,* 635 F.2d 1295, 1300 (7th Cir.1980);

Here, without calling the deponents to appear, the grand jury will obtain evidence given in express contemplation of protection from that body. The government receives evidence it would not have obtained but for overriding a protective order that spawned the deposition in question. The deponents in agreeing to the protective order waived fifth amendment rights in reliance on the order of a district court, and now face the possibility of criminal action based on evidence the grand jury otherwise could not have obtained without their having been immunized.

In the majority view, the enforcement of a protective order against a grand jury subpoena for evidence would constitute a judicial grant of immunity. I agree that granting immunity from prosecution in exchange for testimony is the exclusive prerogative of the executive branch.[3] Protective orders, however, are limited judicial devices to foster quick and productive discovery. Testimony given under Rule 26(c) is isolated and apart from a criminal investigation and does not alter the deponent's potential culpability. Rule 26 does not usurp powers of the grand jury and prosecutor, but instead reflects the authority of a trial judge to manage discovery and control access to judicial records. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984).

The majority's argument that a protective order "may seriously impede a criminal investigation by a grand jury" both overstates the reach of the Rule 26(c) shield and understates the retained power of the grand jury. Rule 26(c) provides only limited protection for evidence that, here, would not exist but for the protective order itself. Unlike a grant of immunity, a protective order has no effect on the continued conduct of the grand jury's investigation. The government remains free to call the deponents before the grand jury to explore their fifth amendment claims and to prosecute or grant immunity. If the deponents are immunized, the grand jury can then demand the sought-after evidence and the balance would tilt conclusively towards enforcing a subpoena for previous deposition testimony.

Another reason that protective orders fall short of a grant of immunity is that they can be modified. Perjury committed by deponents under Rule 26(c) protection, for example, would obviously justify modifying the protective order to permit enforcement of a subpoena for depositions given under it. The potential for modification of a protective order or overriding it through a subpoena thus belies fears of harming grand jury investigations. Here, Judge Hilton expressly provided that his order was subject to modification.

### III

The majority argues that Rule 26(c) is ineffective and should be supplanted by

---

see also *H.L. Hayden Co. v. Siemens Medical Systems*, 106 F.R.D. 551, 556 (S.D.N.Y.1985), aff'd, 797 F.2d 85 (2d Cir.1986).

**3.** The majority is concerned that enforcement of a protective order to preclude a grand jury's access to the protected materials would constitute unseemly "judicial intervention into executive prerogatives." To the contrary, there is no interference with executive processes when a judge enters a protective order prior to any indication that a grand jury may desire to review the protected materials. Likewise, the universe of information to which the fifth amendment privilege could potentially attach may not be, or may never be, the subject of a grand jury investigation. The majority's separation of powers logic, moreover, encourages prosecutorial intrusion into the judicial domain by validating the use of a subpoena duces tecum as a per se enforceable discovery device. What prosecutor will now invoke the less intrusive process of seeking modification of a protective order from the issuing judge when he knows he has virtually unreviewable authority to override the judge's order simply by shielding himself in the cloak of the grand jury's "broad investigative function?" Not only does the subpoena pit the executive against the judicial, but it may result, as it did in this case, in conflict within the judicial branch. For enforcement, the prosecutor must appear before one district judge and ask him to override the issuing judge's order. Here, Judge Hargrove effectively "reversed" the decision of Judge Hilton. In contrast, seeking modification from the issuing judge and appealing, if necessary, an adverse decision, would conform with common trial and appellate practice, and avoids the friction inherent in the subpoena procedure. *See United States v. GAF Corp.*, 596 F.2d 10, 16 (2d Cir.1979).

other methods of eliciting evidence from recalcitrant witnesses. I disagree. The vitality of the protective order has made it a valuable method of facilitating discovery.

Placing higher burdens of proof upon those who invoke the fifth amendment in civil litigation could well retard the truth-seeking function of civil discovery, and it unnecessarily penalizes the exercise of a constitutional right. Nor are stays of discovery during a grand jury investigation and court inquiries into the validity of fifth amendment claims adequate substitutes for Rule 26(c) protective orders. While these are both useful trial management techniques, they can not replace the longstanding role played by Rule 26(c). In my view, Judge Hilton was well within appropriate discretion in rejecting the deponents' motion for a stay because of the pressing need for the depositions in question. *See D'Ippolito v. American Oil Co.*, 272 F.Supp. 310, 312 (S.D.N.Y.1967). I also disagree that possible leaks of confidences covered by a protective order and the potential for disclosure of information at trial warrant the per se rule announced by the majority. Those factors form valid tactical concerns for parties considering protective orders during discovery, but the very purpose of Rule 26(c) is to foster wide-ranging, successful discovery that will often forestall a public trial.

In sum, I feel that Rule 26(c) has worked long and quietly to effect the efficient and just management of civil discovery. The emasculation of protective orders by today's decision replaces the rule with a new presence in civil litigation—the roving eye of government and the attendant rush by affected civil litigants to invoke the fifth amendment in discovery.