**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEFFREY CURTIS GILBERT; ALVITA
VAN BENS; ROBERT GREEN; MARTHA
GREEN,
Petitioners-Appellants,

v.

UNITED STATES OF AMERICA,
Respondent-Appellee,

ROBERT ARSCOTT; PRESTON ASBURY;
JONATHON BEAN; RONALD LEDONNE;
KEVIN PUTNAM; GREGORY SWEITZER;
JAMES LOVE; SEUNG LEE; GERALD

POTTS; CHARLES L. FOBBS; RICHARD
A. FULGINITI; J. RICHARD SALEN;
DANIEL L. HUSK; F. MICHAEL
MCQUILLAN; STEPHEN J. RICKER,
Parties in Interest-Appellees,

v.

RUBIN BUTLER; MICHAEL H.
CARLSON; GREGORY J. PETON;
CHRISTOPHER J. BROPHY; ALLEN W.
DISCHINGER; WILLIAM B. EVARTT;
LEROY K. JAMES,
Parties in Interest.

No. 99-1602

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-98-890-DKC)

Argued: October 27, 1999

Decided: January 13, 2000

Before MURNAGHAN, NIEMEYER, and TRAXLER,
Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded with instructions by
unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Terrell Non Roberts, III, ROBERTS & WOOD, River-
dale, Maryland, for Appellants. Donna Carol Sanger, Assistant United
States Attorney, Baltimore, Maryland; Jay Heyward Creech, Upper
Marlboro, Maryland, for Appellees. **ON BRIEF:** Christopher A. Grif-
fiths, ROBERTS & WOOD, Riverdale, Maryland, for Appellants.
Daniel Karp, ALLEN, JOHNSON, ALEXANDER & KARP, Balti-
more, Maryland; Ronald M. Cherry, MCGUIRE, WOODS, BATTLE
& BOOTHE, Baltimore, Maryland; Robert Morgan, MASON, KET-
TERMAN & MORGAN, Hunt Valley, Maryland; John H. West, III,
Baltimore, Maryland; Paul T. Cuzmanes, WILSON, ELSER, MOS-
KOWITZ, EDELMAN & DICKER, Baltimore, Maryland; Linda S.
Woolf, GOODELL, DEVRIES, LEECH & GRAY, Baltimore, Mary-
land; Baron L. Stroud, SHAPIRO & OLANDER, Baltimore, Mary-
land, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jeffery Curtis Gilbert ("Gilbert") appeals from the district court's
refusal to grant access to certain grand jury materials. Gilbert asserts
he is entitled to (1) the grand jury testimony of twenty-six law

2

enforcement officers who played various roles in Gilbert's arrest, and (2) an FBI report furnished to the grand jury. We affirm in part, reverse in part, and remand with instructions.

I.

In April 1995, Sergeant Ronald LeDonne and Corporals Robert Arscott, Preston Asbury, Jonathon Bean, Kevin Putnam, and Gregory Sweitzer of the Prince George's County T-70 tactical squad executed a warrant for Gilbert's arrest. Gilbert was wanted for the murder of a police officer and the T-70 team apprehended him at the apartment of his girlfriend, Alvita Van Bens ("Van Bens"). The officers' use of force in making the arrest led to Gilbert's hospitalization for multiple injuries. As a result, Gilbert brought a § 1983 action in state court against members of the T-70 team and Prince George's County alleging excessive force was used during the arrest. **1** See 42 U.S.C.A. § 1983 (West Supp. 1998). However, because Gilbert lost consciousness early in the nocturnal raid and ensuing struggle, he has no recollection of who caused his injuries. Van Bens, ushered from the apartment shortly after the T-70 team's entry, caught only a glimpse of the fray.

The defendants removed the suit to federal court, where discovery was stayed because a grand jury was investigating the incident and receiving testimony from many of the officers involved. In ordering the stay in December 1996, a magistrate judge informed the parties that discovery could commence at the earlier of the conclusion of the grand jury investigation or March 31, 1997.

When the month of March passed, the grand jury was still investigating. Gilbert, however, was anxious to begin his case and accordingly issued deposition subpoenas for a number of officers. In

_____

**1** Van Bens, Robert Green, and Martha Green joined with Gilbert in bringing the action. Van Bens' claims arise from her removal from the apartment and the subsequent search of the premises. The Greens' claims arise from the search of their home in conjunction with Gilbert's arrest. Because Gilbert's claim of excessive force is the predominant claim, we shall simply refer to "Gilbert" when discussing the § 1983 action and related litigation.

response to Gilbert's subpoenas and other discovery requests, the T-70 officers moved for a protective order and indicated their unwillingness to discuss the arrest because of the grand jury investigation. By insisting that discovery commence in the civil case while the criminal investigation was ongoing, Gilbert created a situation in which the officers were forced to choose between asserting their Fifth Amendment rights, and hence saying nothing at deposition, or testifying with the concern that anything they said could be used against them before the grand jury. Recognizing that the grand jury investigation would end in a few months, the magistrate judge informed Gilbert that she would compel depositions, but if Gilbert elected to proceed with depositions before the end of the investigation, he would be barred from later reopening them. As a result, Gilbert had to choose between forcing the depositions and probably obtaining the evidentiary benefit of Fifth Amendment assertions,[2] or waiting until the investigation was over and possibly receiving the officers' deposition testimony.

With this understanding, Gilbert scheduled depositions for the T-70 officers while the grand jury investigation was still in progress. All officers, except Arscott, asserted their Fifth Amendment privilege and declined to answer questions. Though Arscott did answer the questions propounded, Gilbert complained that Arscott was less than forthcoming and remembered very little about the conduct of the other team members.

In October 1997, the grand jury investigation ended and no indictment was issued. LeDonne, Putnam, and Sweitzer then responded to Gilbert's interrogatories and requests for production. The three officers also offered to attend depositions if Gilbert would agree not to mention at trial their earlier invocations of the Fifth Amendment. Gilbert, wanting both the adverse inference of the earlier Fifth Amendment assertions and the officers' testimony, declined the offer and filed a motion to reopen their depositions, which the court denied. Unlike their colleagues, Asbury and Bean refused to provide Gilbert

_____

[2] "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ." Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).

4

with any discovery and continued to invoke their Fifth Amendment privilege.

Gilbert then filed a separate action, which is the subject of this appeal, to gain access to grand jury materials pursuant to Federal Rule of Criminal Procedure 6(e). Specifically, Gilbert asked for access to the grand jury testimony of twenty-six law enforcement officials including Asbury, Bean, Putnam, and Sweitzer;[3] the physical evidence collected after Gilbert's arrest and the FBI's report containing the results of tests performed on the evidence;[4] and the original copy of the Prince George's County police investigative file concerning Gilbert's arrest and his alleged murder of a police officer.

The district court rejected Gilbert's request for the grand jury testimony, finding no showing of a particularized need. As for the FBI materials, the district court directed that the physical evidence be turned over to Gilbert, but refused to order the release of the report because Gilbert could obtain his own expert analysis. Lastly, the district court found that Gilbert was entitled to the original police investigative file which had been turned over to the grand jury. Gilbert now appeals the district court's decision denying him access to the grand jury testimony of the officers and the FBI report.

II.

We review the district court's denial of access to grand jury materials for abuse of discretion. See In re Grand Jury Proceedings, GJ-76-4 & GJ-75-3, 800 F.2d 1293, 1299 (4th Cir. 1986); see also Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399 (1959)

_____

[3] Sergeant LeDonne did not testify before the grand jury; Asbury, Bean, Putnam, and Sweitzer testified before the grand jury under grants of immunity. The other twenty-two officers whose testimony is sought played various roles in the case such as briefing the T-70 team before the raid, backing up the entry squad, or gathering evidence after Gilbert's arrest. It is undisputed that only the T-70 squad was in the apartment when Gilbert was subdued and injured.

[4] Sundry items were collected from the apartment including clothing, bedding, and carpet. The FBI also subpoenaed articles of clothing worn by the T-70 officers during the arrest.

5

(noting that "Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge"). In light of the import of the grand jury's core functions, secrecy is a hallmark of its proceedings. See Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979). However, Federal Rule of Criminal Procedure 6(e) provides exceptions to the general rule of secrecy. At issue in the present case is Federal Rule of Criminal Procedure 6(e)(3)(C)(i), which in pertinent part provides that disclosure may be made "when so directed by a court preliminary to or in connection with a judicial proceeding." According to the Supreme Court, the burden is on the applicant for disclosure of confidential grand jury materials to establish "a strong showing of particularized need . . . before any disclosure will be permitted." United States v. Sells Eng'g, Inc., 463 U.S. 418, 443 (1983). In demonstrating particularized need, the party must establish that (1) the material "is needed to avoid a possible injustice in another judicial proceeding," (2) "the need for disclosure is greater than the need for continued secrecy," and (3) the "request is structured to cover only material so needed." Douglas Oil Co., 441 U.S. at 222. In balancing the need for secrecy and disclosure, courts must be cognizant of the rationale behind grand jury confidentiality.

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Id. at 219. Once the proceeding of the grand jury ends, the interests of secrecy are reduced, but not eliminated. See id. at 222. "[S]tringent protection of the secrecy of completed grand jury investigations may be necessary to encourage persons to testify fully and freely before future grand juries." Illinois v. Abbot & Assocs., Inc., 460 U.S. 557,

6

566 n.11 (1983). Because the <u>Douglas Oil Co.</u> balancing test is "highly flexible" as well as "adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others," <u>Sells Eng'g, Inc.</u>, 463 U.S. at 445, we address Gilbert's request as follows: (1) the grand jury testimony of the two T-70 officers who refused to provide any discovery and maintained their Fifth Amendment rights, (2) the grand jury testimony of the two T-70 officers who offered to be redeposed if Gilbert agreed not to use their earlier invocation of the Fifth Amendment at trial, (3) the grand jury testimony of the remaining officers who have no personal knowledge of what happened while the T-70 squad was alone with Gilbert in the apartment, and (4) the FBI report.

A.

Gilbert claims that the grand jury testimony of Corporals Asbury and Bean should be disclosed. Asbury and Bean are the only officers who have refused to provide Gilbert any discovery, while continuing to invoke the Fifth Amendment. The district judge denied Gilbert's request for Asbury's and Bean's grand jury testimony on the grounds that they probably would not be allowed to testify at trial, <u>see In re Grand Jury Subpoena</u>, 836 F.2d 1468, 1472 (4th Cir. 1988), and Gilbert could use their assertions of the Fifth Amendment as adverse inferences. The district judge also observed that Gilbert could garner the necessary information about the arrest from the other T-70 officers.

As a general matter, the discovery process is integral to the Federal Rules and "a party is entitled . . . to discovery of any information sought if it appears `reasonably calculated to lead to the discovery of admissible evidence.'" <u>Degen v. United States</u>, 517 U.S. 820, 825-26 (1996) (quoting Fed. R. Civ. P. 26(b)(1)). However,"[a]ssertion of the privilege against self-incrimination may disrupt or thwart civil litigation and discovery in a wide variety of cases." <u>In re Grand Jury Subpoena</u>, 836 F.2d at 1473. Even so, grand jury testimony should never be used as a substitute for thorough discovery. <u>See Lucas v. Turner</u>, 725 F.2d 1095, 1106 (7th Cir. 1984). In the present case, only eight people were in the apartment during the arrest: Van Bens, Gilbert, and the T-70 squad. Van Bens was quickly ushered from the room before the arrest and Gilbert was knocked unconscious early in

7

the altercation. This leaves only six individuals with personal knowledge of the force used to control Gilbert. Discovery revealed that Arscott struck Gilbert several times, LeDonne kicked Gilbert and LeDonne saw Asbury kick Gilbert "on one or two occasions." J.A. at 797. But this scant information does not explain how Gilbert sustained injuries requiring hospitalization.

While it is true that Asbury's and Bean's invocation of the Fifth Amendment will be available to Gilbert at trial and Gilbert has gathered some information through the discovery process, there is no substitute for personal accounts of the course of the arrest. And the T-70 officers are the only persons who can provide this information. Gilbert justifiably fears that unless he can piece together the course of the arrest, his § 1983 action will be seriously weakened. At oral argument counsel for the officers averred that Gilbert had access to all necessary information from other sources and therefore Asbury's and Beans's grand jury testimony should not be disclosed. But when questioned by the court, counsel for the officers admitted that he could not accurately represent that all relevant information was available, presumably because counsel had not seen the grand jury materials. Accordingly, we conclude that Gilbert meets the first Douglas Oil Co. factor because he has shown that grand jury testimony of Asbury and Bean "is needed to avoid a possible injustice in another judicial proceeding." 441 U.S. at 222.

Likewise, Gilbert has demonstrated that the need for disclosure of Asbury's and Bean's grand jury testimony outweighs the interests in secrecy. Asbury and Bean have provided no discovery in the § 1983 action. As mentioned above, the number of officers with personal knowledge of the arrest is limited and without details from the testimony of the participants or eyewitnesses to the arrest, Gilbert's case will be damaged from the lack of specificity needed to obtain a just verdict. Importantly, throughout this litigation, the grand jury transcripts have been Gilbert's only hope of obtaining Asbury's and Bean's version of the arrest. Moreover, the interests of secrecy are reduced because the grand jury investigation is long over. See In re Grand Jury Proceedings, GJ-76-4 & GJ-75-3, 800 F.2d at 1301 (noting that the need for secrecy diminishes when the grand jury investigation ends and when there is a "[l]apse of time between the grand jury proceedings and the motion for disclosure").

8

Finally, we find that the request for Asbury's and Bean's testimony "is structured to cover only materials so needed." Douglas Oil Co., 441 U.S. at 222. The grand jury investigation was apparently limited to the officers' conduct during Gilbert's arrest. Because of the similitude of the investigation and Gilbert's excessive force claim, Gilbert's request for Asbury's and Bean's grand jury testimony is "limited to that material directly pertinent to the need for disclosure." Id. at 224. By requiring the disclosure of Asbury's and Bean's testimony, we lift the veil of grand jury secrecy no more than is absolutely necessary and so adhere to the Douglas Oil Co. admonition that disclosure be no greater than needed. See id. at 222. Accordingly, we reverse the decision denying Gilbert access to the grand jury testimony of Asbury and Bean and remand to the district court for the release of Asbury's and Bean's testimony to Gilbert.

B.

Gilbert also asks for Corporals Putnam's and Sweitzer's grand jury testimony. As was the case with Asbury and Bean, the limited number of persons with knowledge of the force used to subdue Gilbert, and the likelihood that Gilbert's § 1983 action will suffer from this dearth of information, support Gilbert's claim that he has demonstrated that the grand jury testimony of Putnam and Sweitzer "is needed to avoid a possible injustice in another judicial proceeding." Id.

Turning to the second Douglas Oil Co. factor, however, we conclude that Gilbert has failed to demonstrate that the interests in disclosure of Putnam's and Sweitzer's grand jury testimony outweigh the interests in secrecy. During the pendency of the grand jury investigation Gilbert issued deposition subpoenas to the T-70 officers. Although Asbury, Bean, LeDonne, Putnam, and Sweitzer invoked their Fifth Amendment privilege, Gilbert scheduled the depositions knowing that he would be prohibited from reopening the depositions after the grand jury proceedings concluded. Even though the magistrate judge attempted to persuade Gilbert to wait until the end of the grand jury investigation to conduct depositions of the officers, Gilbert elected to go forward cognizant that the officers would likely invoke the Fifth Amendment. Unlike Asbury and Bean, however, Putnam and Sweitzer offered to be redeposed if Gilbert agreed not to mention at trial their earlier assertions of the Fifth Amendment. Wanting both

9

the adverse inference of the Fifth Amendment assertions and the officers' deposition testimony, Gilbert refused the offer and filed a motion to reopen the depositions, which was predictably denied.

Unlike Asbury and Bean, who throughout this litigation have refused to respond to written discovery or to provide testimony, Gilbert could have deposed Putnam and Sweitzer. The choice that the officers' compromise posed was an election created by Gilbert himself in his press for the commencement of discovery before the conclusion of the grand jury investigation. Cf. Sells Eng'g, Inc., 463 U.S. at 445 (stating that courts may "take into account any alternative discovery tools available" to the party seeking disclosure of grand jury materials); Lucas, 725 F.2d at 1106 (emphasizing grand jury testimony is not a substitute for discovery). Because Gilbert could have redeposed Putnam and Sweitzer, the fact that the grand jury investigation has concluded is not enough to tip the scales toward disclosure. With the interests of secrecy counseling against disclosure, we do not reach the remaining Douglas Oil Co. factor. Accordingly, the district court did not abuse its discretion by denying Gilbert access to the grand jury testimony of Putnam and Sweitzer.

C.

Gilbert also believes he is entitled to the testimony of twenty-two other officers who testified in the grand jury investigation. However, Gilbert has not shown that their testimony "is needed to avoid a possible injustice" in his § 1983 action. Douglas Oil Co., 441 U.S. at 222.

The twenty-two officers made themselves available for depositions, but testified that they have no personal knowledge of what happened between the T-70 squad and Gilbert. Gilbert, on the other hand, claims that the officers are biased in favor of the T-70 squad and as a consequence the twenty-two officers in their depositions failed to recall significant details about the raid in order to protect the T-70 team. Gilbert's general assertions that memories may have faded or that the officers withheld information to protect themselves or their colleagues are insufficient to establish a need for their grand jury testimony. See United States v. Chase, 372 F.2d 453, 466 (4th Cir. 1967) (concluding that the possibility that a witness' grand jury testimony differed from that given on another occasion is "insufficient reason to

10

pierce the veil of secrecy which protects the proceedings of such a body"); see also Lucas, 725 F.2d at 1102 (observing that "unsubstantiated allegations that a cover-up occurred" fail to establish need).

Requests for disclosure of grand jury materials should be crafted to cover only those materials needed. See Douglas Oil Co., 441 U.S. at 222. When a particularized need is shown, secrecy"is lifted discretely and limitedly." Procter & Gamble Co. , 356 U.S. at 683. To allow Gilbert access to the grand jury testimony of the twenty-two officers would turn this rule on its head. The district judge correctly described such a request as a "fishing expedition that [does] not justify breaching grand jury secrecy." J.A. at 946-47; see also In re Grand Jury 95-1, 118 F.3d 1433, 1437 (10th Cir. 1997) (stating that requests for access to grand jury materials "must amount to more than a request for authorization to engage in a fishing expedition") (internal quotation marks omitted). Because Gilbert cannot show a need, he cannot obtain disclosure.

Thus, we conclude that the district court did not abuse its discretion in denying Gilbert access to the grand jury testimony of the twenty-two officers. The officers have no first-hand knowledge of what occurred inside the apartment and apparently they have all cooperated and been deposed regarding the arrest. Bare assertions that the police cover up for each other will not establish a need for grand jury testimony.

D.

Finally, Gilbert argues that the district court abused its discretion when it refused to grant access to the FBI report, the results of which were related to the grand jury. Like the grand jury testimony of the twenty-two officers without personal knowledge of the arrest, Gilbert has failed to show that he needs the report to avoid a possible injustice in his § 1983 action.

Gilbert speculates that the report could possibly shed light on the identity of his assailants, but mere speculation does not establish need. The physical evidence examined by the FBI has been turned over to Gilbert. Gilbert simply claims that it would be unduly burdensome and expensive for him to hire his own expert to conduct tests.

11

He also ventures that because blood is perishable he may not be able to replicate any blood identification tests. However, neither in his brief nor at oral argument has Gilbert indicated that he has made any effort to conduct his own examination of the material. Under Douglas Oil Co., the burden "rests upon the private party seeking disclosure," 441 U.S. at 223, to demonstrate a need for the material sought. Here, Gilbert offers no evidence to buttress his naked assertions that the burden and expense of his own testing would be undue. See In re Grand Jury Proceedings, Miller Brewing Co., 687 F.2d 1079, 1092 (7th Cir. 1982) (observing "that cost considerations are not usually enough by themselves to constitute particularized need"). Moreover, there is no indication that Gilbert has retained an expert for the limited purpose of determining whether the blood samples have deteriorated. In light of his inaction, Gilbert has not shown that access to the FBI report is needed for the prosecution of his§ 1983 action--and for this reason we conclude that the district court did not abuse its discretion in denying Gilbert access to the FBI report.

III.

For the foregoing reasons we conclude that the district court erred in denying Gilbert access to the grand jury testimony of Asbury and Bean. However, the district court was correct in denying Gilbert access to the grand jury testimony of the remaining twenty-four officers and to the FBI report.

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED WITH INSTRUCTIONS

12