**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ALFRED WRIGHT,
Claimant-Appellant,

and

TEN (10) VEHICLES, each together
with its equipment, accessories and
contents, more particularly
described as follows: One (1) 1991
HONDA ACCORD, VIN
JHMCB7684MC065272, Blue in
color, South Carolina License
Number DJT290 (1995), Registered
Owner: Alfred Wright; ONE (1)

1994 PLYMOUTH VOYAGER SPORT
VAN, VIN 1P4GH44RX160897,
green in color, South Carolina
license number JBJ665 (1995),
Registered owner: Alfred Wright;
ONE (1) 1994 CHEVROLET SILVERADO
EXTENDED CAB PICKUP TRUCK,
VIN2GEC19K4R1160802, red in
color, South Carolina license
number LZR315 (1994), registered
owner: Alfred Wright; ONE (1) 1994
MERCEDES S420, VIN
WDBGA43EXRA181611, black in
color, South Carolina license
number XUBUZZY (1994),
Registered owner: Alfred Wright;

No. 97-2031

ONE (1) 1995 MITSUBISHI ECLIPSE AUTOMOBILE, VIN 4A3AK34UXSE029749, green in color, South Carolina license number KD7877 (1995), Registered owner: Geraldine Wilson; ONE 1991 VOLVO 944SE, VIN YV1KA87423M001852, black in color, New York license number SCHEMARA (1994), Registered owners: Alfred C. Wright and Schemara Wright; ONE (1) 1993 CADILLAC ALLANTE CONVERTIBLE, VIN 1G6VS3397PU125112, red in color, New York license number ZUBUZZY (1994), Registered owner: Alfred C. Wright; ONE 1992 CHEVROLET FLEETSIDE PICKUP TRUCK K2500, 4-Wheel Drive with snowplow, blue in color, VIN 1GCGK24K1NE188473, New York license number F3D632 (1994), Registered owner: Alfred Wright; ONE (1) 1994 MERCEDES BENZ S600V, VIN WDBGA57E0RA157706, black in color, New York license number ZOBUZZY (1994), Registered owner: Alfred Wright; ONE (1) 1994 HONDA PASSPORT, VIN 4S6CY58V7R4406983, green in color, New York license number Y3F498 (1994), Registered owner: Alfred C. Wright; ONE PARCEL OF

REAL PROPERTY DESIGNATED AS LOT 11 BLOCK GIN OTRANTO SUBDIVISION SECTION III-BAND LOCATED IN THE COUNTY OF BERKELEY, STATE OF SOUTH CAROLINA WITH ALL IMPROVEMENTS THEREON AND WITH ALL RIGHTS AND EASEMENTS APPERTAINING BEING TITLED IN THE NAME OF ALFRED C. WRIGHT; ONE PARCEL OF REAL PROPERTY CONTAINING TWENTY AND 01/100 (20.01) ACRES MORE OR LESS AND LOCATED IN SECOND ST. JAMES GOOSE CREEK PARISH IN THE COUNTY OF BERKELEY, STATE OF SOUTH CAROLINA WITH ALL IMPROVEMENTS THEREON AND WITH ALL RIGHTS AND EASEMENTS APPERTAINING BEING TITLED IN THE NAME OF ALFRED C. WRIGHT; 13 SECOND AVENUE, ONE PARCEL OF REAL PROPERTY LOCATED AT 13 SECOND AVENUE IN THE CITY OF SPRING VALLEY, COUNTY OF ROCKLAND, STATE OF NEW YORK  WITH ALL IMPROVEMENTS THEREON AND WITH ALL RIGHTS AND EASEMENTS APPERTAINING, BEING TITLED IN THE NAME OF ALFRED C. WRIGHT;

17 SECOND AVENUE, ONE PARCEL OF REAL PROPERTY LOCATED AT 17 SECOND AVENUE IN THE CITY OF SPRING VALLEY, COUNTY OF ROCKLAND, STATE OF NEW YORK WITH ALL IMPROVEMENTS THEREON AND WITH ALL RIGHTS AND EASEMENTS APPERTAINING, BEING TITLED IN THE NAME OF ALFRED C. WRIGHT; 19 SECOND AVENUE, ONE PARCEL OF REAL PROPERTY LOCATED AT 19 SECOND AVENUE IN THE CITY OF SPRING VALLEY, COUNTY OF ROCKLAND, STATE OF NEW YORK WITH ALL IMPROVEMENTS THEREON AND WITH ALL RIGHTS AND EASEMENTS APPERTAINING, BEING TITLED IN THE NAME OF ALFRED C. WRIGHT; 21 SECOND AVENUE, ONE PARCEL OF REAL PROPERTY LOCATED AT 21 SECOND AVENUE IN THE CITY OF SPRING VALLEY, COUNTY OF ROCKLAND, STATE OF NEW YORK WITH ALL IMPROVEMENTS THEREON AND WITH ALL RIGHTS AND EASEMENTS APPERTAINING, BEING TITLED IN THE NAME OF ALFRED C. WRIGHT; BLOCK "C", ONE PARCEL OF REAL PROPERTY CONTAINING FOUR AND 8/10 (4.8) ACRES MORE OR LESS DESIGNATED AS BLOCK "C"AND

4

LOCATED IN SECOND ST. JAMES GOOSE CREEK PARISH ON EVA HILL LAND NEAR THE CITY OF HOLLY HILL IN THE COUNTY OF BERKELEY, STATE OF SOUTH CAROLINA WITH ALL IMPROVEMENTS THEREON INCLUDING ONE 1991 FLEETWOOD 24′ X 52′ DOUBLE-WIDE MOBILE HOME MODEL EAGLE TRACE SERIAL NUMBER GAFLL35A&B03696ET TITLED IN THE NAME OF GERALDINE WILSON SITUATED ON AND/OR AFFIXED TO THE ABOVE DESCRIBED REAL PROPERTY AND WITH ALL RIGHTS AND EASEMENTS APPERTAINING BEING TITLED IN THE NAMES OF ALFRED C. WRIGHT VESTED REMAINDER INTEREST AND EVA BROWN WRIGHT LIFE ESTATE AND GERALDINE WILSON MOBILE HOME,
<u>Defendants,</u>

MERCEDES-BENZ CREDIT CORPORATION; CHASE MANHATTAN AUTO; GERALDINE WILSON; CAROLYN M. UMPHLETT, Treasurer of Berkeley County, SC; DARLENE KINLOCK; GEORGE W. RENC; ETHEL MURPHY; JAMES RODEN; SHIRLEY ANN JACKSON; PAULINE PETRKIN; SCHEMARA WRIGHT,
<u>Claimants.</u>

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CA-95-2360-2-18, CA-95-3062-18, CA-96-2008-2-18, CA-96-2359-2-18)

5

Argued: May 3, 1999

Decided: July 19, 1999

Before MURNAGHAN, LUTTIG, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael S. Seekings, Charleston, South Carolina, for Appellant. Stanley D. Ragsdale, Assistant United States Attorney, Columbia, South Carolina, for Appellee. **ON BRIEF:** J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The United States ("Government") brought in rem civil forfeiture proceedings against various properties owned by Alfred Wright ("Wright"), alleging that he acquired those properties with proceeds from illegal gambling and money laundering operations. After Wright failed to appear at two depositions, in contravention of the district court's order, the court granted the Government's Second Motion for Sanctions and/or Default Judgment and, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, entered a default judgment against Wright. Wright now appeals from that order. Finding no abuse of discretion, we affirm.

I.

On August 14, 1996, Wright was indicted in the District of South Carolina on forty-six counts of gambling and money laundering.**1** Concurrently, the Government instituted in rem civil forfeiture proceedings against various properties owned by Wright, alleging that Wright acquired those properties with illegitimate funds.

On May 19, 1997, Wright appeared before the district court for sentencing in his criminal case. Upon reviewing the Pre-Sentence Report, however, the district judge decided that Wright had not provided sufficiently detailed financial information for the court to determine the appropriate sentence. United States v. Alfred Wright, 2:95-883, Tr. at 14-15 (D.S.C., May 19, 1997). Accordingly, the court stayed the sentencing proceedings in the criminal case until the completion of the parallel civil forfeiture case.

Wright's deposition in the civil forfeiture case was initially scheduled to occur in New York on June 5, 1997. Although the Government served Wright with a subpoena commanding his attendance at the deposition, Wright failed to appear. On June 9, 1997, the Government filed its first Motion for Sanctions and/or Default Judgment. Subsequently, on June 30, 1997, Wright filed a Motion to Stay Proceedings in the civil forfeiture case pending final resolution of his criminal case.

On July 3, 1997, the parties appeared before the district court in the civil forfeiture case. The district court found that, by failing to appear for his deposition, Wright had acted in bad faith and had prejudiced the Government. The court sanctioned Wright by imposing on him

_____

**1** As the alleged leader of an illegal gambling and money laundering operation, Wright instructed his co-conspirators to open various bank accounts in South Carolina. In order to avoid Internal Revenue Service filings by those banks, Wright provided his co-conspirators with explicit instructions regarding the timing and amount of deposits to be made into the accounts.

Wright eventually entered into a negotiated plea agreement with the Government and, on October 7, 1996, pleaded guilty to one count of money structuring, in violation of 31 U.S.C. § 5324(a)(3) and (c)(2).

7

the Government's costs to attend the aborted deposition in New York, and it rescheduled the deposition in Columbia, South Carolina. During the hearing, the district court also explicitly warned Wright's counsel that, if Wright failed to appear at the rescheduled deposition, the court would enter a default judgment against him. At his counsel's request, Wright's Motion to Stay Proceedings in the civil forfeiture case was held in abeyance.

Wright's deposition was rescheduled for July 10, 1997, in Columbia, South Carolina. Once again, without explanation, Wright failed to attend. The Government filed its Second Motion for Sanctions and/or Default Judgment on the same day. On July 22, 1997, the district court granted the Government's motion and entered a default judgment against Wright. The district court simultaneously denied Wright's Motion to Stay Proceedings. Wright now appeals the district court's decision ordering judgment by default.

## II.

On appeal, Wright raises two issues. First, Wright contends that the district court abused its discretion in denying his motion to stay the civil forfeiture case pending final resolution of the related criminal case. Second, he argues that the district court abused its discretion by imposing the sanction of judgment by default against him for failing to comply with discovery in the civil forfeiture case. We address each issue in turn.

## A.

We review a district court's denial of a motion to stay for abuse of discretion. Ungar v. Sarafite, 376 U.S. 575, 589 (1964). Although Wright concedes that there is no constitutional guarantee requiring a stay in a civil forfeiture proceeding pending completion of all criminal matters, he maintains that "it is imperative and proper that the two matters be kept separate and distinct." Wright contends that the district court should exercise its discretion to stay civil forfeiture proceedings pending completion of the related criminal proceedings to avoid any conflict between the two and any prejudice to the defendant.

8

Wright correctly asserts that the Supreme Court has indicated that the Government may not use evidence against a criminal defendant which has been coerced from him under penalty of suffering a forfeiture of his property. United States v. Kordel , 397 U.S. 1, 13 (1970). Additionally, this court has noted that, when the Government directly or indirectly sponsors a civil suit for the purpose of aiding a criminal investigation, Fifth Amendment and ethical concerns are raised. In re Grand Jury Subpoena, 836 F.2d 1468, 1472 n.6 (4th Cir. 1988).

Such concerns, however, are simply not implicated in this case. Here, Wright entered into a negotiated plea agreement in his criminal case, then proceeded to participate, without objection, in the parallel civil forfeiture action. At the time of his sentencing hearing in the criminal case, however, Wright had not provided the probation officer with a full and complete financial history. As the district court noted, Wright's failure to provide complete financial information created the possibility of an anomalous result. If allowed to proceed with sentencing with incomplete financial information, Wright may have been able to underestimate his income in order to avoid a criminal fine, yet overstate his legitimate income in the parallel civil forfeiture action to prove the properties in question were acquired with untainted funds.

Significantly, Wright did not raise a claim of Fifth Amendment privilege against self-incrimination in the district court proceedings, nor does he do so now. In addition, Wright never requested a protective order from the district court. Until he filed his Motion to Stay Proceedings, Wright never raised any concerns regarding the fact that the civil forfeiture case was proceeding concurrently with the criminal case. Wright then requested that his Motion to Stay proceedings be held in abeyance. Because Wright did not raise any of these potential objections below, the district court was never given the opportunity to rule on them; Wright has therefore waived his ability to raise them here.

The district court's decision to deny a stay in Wright's civil forfeiture case pending the completion of the related criminal case does not run afoul of any concern identified by this court or the Supreme Court. Consequently, there was no abuse of discretion and we affirm the district court's decision on this issue.

9

B.

Wright next argues that the district court abused its discretion by entering judgment by default against him as a sanction for his failure to appear at the rescheduled deposition. A district court's decision to impose judgment by default as a sanction is governed by Rule 37 of the Federal Rules of Civil Procedure. Rule 37(d) gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders. Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989). This court, therefore, reviews a district court's decision under Rule 37(d) for an abuse of discretion. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976). However, when the sanction imposed is judgment by default, the district court's range of discretion is more narrow due to a party's right to a jury trial and a fair day in court and the "sound public policy of deciding cases on their merits." Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503-04 (4th Cir. 1977). A district court should only exercise its discretion to enter a default judgment where it is demonstrated that the failure to comply with discovery "materially affects the substantial rights of the adverse party and is prejudicial to the presentation of his case." Id. at 504.

Wright's deposition was scheduled to occur in New York on June 5, 1997. The civil forfeiture trial was scheduled to begin on July 14, 1997. Prior to the deposition, the Government served Wright with a subpoena commanding his presence at the deposition. Without explanation, Wright failed to appear.

In response to Wright's failure to appear, the Government, pursuant to Rules 37(d) and 55(b)(2) of the Federal Rules of Civil Procedure,[2] moved the district court for the imposition of sanctions against Wright, as well as for the entry of a default order against Wright. Rule 37(d) provides, in pertinent part:

_____

[2] The district court addressed the Government's initial Motion for Sanctions and/or Default Judgment and its Second Motion for Sanctions and/or Default Judgment under Rule 37(d). Accordingly, we review the district court's decision under that rule.

10

> If a party . . . fails (1) to appear before the officer who is to take the deposition, after being served with proper notice . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), or (C) of subdivision (b)(2) of this rule.

Fed. R. Civ. P. 37(d). Subparagraph (C) of Rule 37(b)(2) authorizes the district court to make the following orders:

> An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or <u>rendering a judgment by default against the disobedient party.</u>

Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

When it considered the Government's initial Motion for Sanctions and/or Default Judgment, the district court made the following findings: (1) Wright acted in bad faith by not attending his deposition; (2) the Government was prejudiced by Wright's "unilateral failure to attend"; and (3) this type of noncompliance with discovery should be deterred. The district court then sanctioned Wright by imposing on him the Government's travel costs and ordered the deposition to be rescheduled to take place in Columbia, South Carolina. The district court did not grant the Government's request for entry of a default judgment against Wright; however, it specifically informed Wright's counsel that failure to appear at the rescheduled deposition would result in default.

Subsequently, and notwithstanding the clear warning of the district judge, Wright failed to appear for the rescheduled deposition in Columbia, South Carolina. Once again, Wright's counsel could provide no legitimate excuse for Wright's absence. The Government filed its Second Motion for Sanctions and/or Default Judgment and the district court, acting as it had represented it would, granted the motion and entered a default judgment against Wright and in favor of the Government on July 22, 1997.

11

When deciding a Rule 37(d) default judgment motion, a district court must weigh the competing interests of the court's desire to enforce its discovery orders against the party's right to a trial by jury and a fair day in court by applying a four part test. Wilson, 561 F.2d at 503-04; Mutual Fed., 872 F.2d at 92. The factors a court must consider are:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

Wilson, 561 F.2d at 503-06. The purpose of such an evaluation is to ensure that only the most flagrant cases of noncompliance will result in judgment by default. Mutual Fed., 872 F.2d at 92.

In this case, the district court clearly applied the Wilson factors. First, it specifically found that, although Wright had actual notice of both depositions, he wilfully and in bad faith failed to appear.

Second, the court found that because Wright had denied the Government's factual assertions in his answers and alleged that the properties in question were acquired with legitimate funds, his refusal to be deposed deprived the Government of the ability to discover material evidence that Wright intended to offer at trial as a defense to the forfeitures. This deprivation of discovery was prejudicial to the Government's ability to present its case.

Third, the district court found that there was an obvious need to deter this sort of noncompliance. Parties in civil proceedings must be afforded the opportunity to uncover evidence which could affect the outcome of the case. The district court found that to rule otherwise would render the rules governing civil discovery meaningless.

Finally, the district court found that a less drastic sanction would be ineffective. The court had previously imposed a less drastic sanction when it assessed costs and rescheduled the deposition, and it had

12

specifically warned Wright that failure to attend the rescheduled deposition would result in the entry of default judgment against him. Additionally, the court found that any lesser sanction would not supply the Government with the material evidence which Wright had refused to provide.

The Supreme Court has instructed that the most severe sanction, judgment by default, "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League, 427 U.S. at 643. We conclude that the district court acted within its discretion when it decided that Wright's conduct warranted the imposition of the default judgment sanction, and accordingly, affirm the judgment.

AFFIRMED

13